Duncan v. State.

---

## Duncan v. State.

49 543
62 307
49 543
73 572
49 543
f 84 126

1. HOMICIDE:  *When justifiable in resisting assault.*

No one, in resisting an assault made upon him in the course of a sudden quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel, or which is made from anger suddenly aroused at the time the assault is made, is justified or excused in taking the life of his assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury; and he must employ all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. But where such an assault is so fierce as to make it, apparently, as dangerous for the person assaulted to retreat as it is to stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life or to prevent a great bodily injury, may slay his assailant.  *Mansf. Dig., sec. 1553; Dolan v. State, 40 Ark., 459; Harris v. State, 36 Ark., 127; McPherson v. State, 29 Ark., 231, 233, 235; Palmer v. State, id., 267; Fitzpatrick v. State, 37 Ark., 252; Levells v. State, 32 Ark., 589.*

2. SAME:  *Same: Instruction.*

On the trial of an indictment for murder, where there was no evidence that defendant and deceased were unfriendly at any time previous to the killing, but on the contrary there was evidence conducing to prove that the relations between them were friendly, and that the deceased was killed in resisting an assault made by him while he was in the heat of passion, aroused by the defendant at the time of such assault, the defendant asked the court to instruct the jury, that if

Duncan v. State.

they believed from the evidence "that the defendant had reasonable cause to believe that the deceased was approaching him with intent to take his life, or commit any aggravated felony on his person, and the danger was imminent, and that he had done all that he could to avoid the difficulty, *without retreating*, in such case the defendant could not be required to retreat before taking the life of the deceased, and the jury ought in such case to acquit." *Held* : That the instruction was properly refused, as the doctrine it states, if applicable to any case, does not apply to this.

3. MURDER : *Sufficiency of evidence.*

For a statement of evidence held sufficient to sustain a verdict of murder in the second degree, see the opinion.—REP.

APPEAL from *Little River* Circuit Court.
R. D. HEARN, Judge.

. The appellant *pro se.*

In all felonious, violent, fierce or murderous attacks, the defendant may stand his ground and take the life of his assailant if necessary to prevent the commission of the felony, or protect his own person from great bodily injury, etc., and he need not retreat. But in ordinary cases of simple assault, mutual quarrels or combat, and where the defendant has brought about the conflict, he must in good faith retreat and decline the conflict, and do all things in his power consistent with his safety to avert the necessity of taking life. *Cases of Self-Defence, 155, 310, 28, 139, 725, 733, 863, 277, 734, 814, etc.; 2 Bish. Cr. Law, sec. 632; id., secs. 633, 624 to 639, 4th ed.; Roscoe Cr. Ev., 6th ed., 711, side; Mansf. Dig., secs. 1547-8-9; 29 Ohio St., 186; 23 Am. Rep., 733; 26 id., 52; Thacher's Cr. Cas., 471.*

It is only necessary to show a reasonable cause to apprehend death or great bodily harm; it is not necessary that the danger be real; if apparent it is sufficient. *Cases Self-Defence, 256, 298, 101, 647, 285, 267.*

Reviews the Arkansas cases, and contends that the court erred in modifying instructions, so as to charge that a retreat was necessary under the evidence in this case.

*Dan W. Jones,* Attorney General, for appellee.

The killing being proved, the *onus* was on defendant to show justification. *Mansf. Dig., sec. 1520.*

If defendant was so situated that he could have gone away and thus averted the necessity of killing in order to prevent bodily harm to himself, it was his duty to have done so. *29 Ark., 229, 267; 40 Ark., 459; 36 id., 131; Mansf. Dig., sec. 1553; 32 Ark., 590.*

BATTLE, J. The appellant was indicted in the Little River Circuit Court for murdering one N. B. Brooks. The jury found him guilty of murder in the second degree and fixed the term of his imprisonment in the penitentiary at five years. He moved for a new trial, which was denied, and the court pronounced judgment against him according to the verdict, and he appealed.

On the trial the defendant asked the court to give the following, among other instructions, to the jury:

"I. The defendant asks the court to instruct the jury, that justifiable homicide is the killing of a human being in necessary self-defence, or in defence of habitation, person or property against one who manifests, intends, or endeavors by violence or surprise, to commit a known felony; and, if in this case the jury believe from the evidence that the defendant had reasonable cause to believe that the deceased intended to take the life of the defendant, or do him some great bodily harm, by violence or surprise, and the danger was apparently imminent, the jury must acquit."

"II. The defendant asks the court to instruct the jury, that a defendant is justifiable in killing any person who attempts to commit murder, rape, robbery, burglary, or any other aggravated felony, although not specifically named, upon either the person or property of any person; and, if the jury believe
35

from the evidence in this case, that the defendant had reasonable cause to believe that the deceased was approaching him with intent to take his life or commit any aggravated felony on his person, and the danger was imminent, and that he had done all that he could to avoid the difficulty, *without retreating*, in such case the defendant would not be required to retreat before taking the life of the deceased, and the jury ought in such case to acquit."

"VII.   The court instructs the jury that if they believe from the evidence that the defendant had been sick and was weak and unable to enter into a personal conflict, scuffle or fight, in arriving at their conclusions as to the defendant's conduct and action, they will take into consideration his state of health; and if the jury believe the deceased with little or no provocation got out his knife and pursued defendant in such threatening attitude and made such threats toward defendant as to give the defendant reasonable cause to believe that the deceased intended to take his life or do him great bodily harm, and they further believe that the defendant retreated from the fence to the road, and the deceased crossed the fence in pursuit of defendant and the danger was apparently imminent, the jury must acquit."

"VIII.   The court instructs the jury that no man is required to retreat if the danger would be increased or his life endangered thereby; and the jury in arriving at their verdict or conclusion, will take into consideration, the defendant's state of health and strength and general physical condition; and if the jury believe from the evidence the deceased was advancing on the defendant with a knife drawn and the danger of defendant would have been increased, or his life endangered by retreating, the jury will acquit."

To the first instruction the court added the words: "Provided the defendant had employed all the means reasonably within his power, and consistent with his safety, to avoid the

danger and avert the necessity," and gave it as amended; and struck out of the second instruction asked for, the words, "without retreating, in such case the defendant would not be required to retreat before taking the life of the deceased, and the jury ought in such case to acquit," and gave it as amended; and to the instruction numbered 7, which was asked by defendant, added the words, "provided that the defendant used all the means reasonably within his power and consistent with his safety to avoid the danger and avert the necessity of taking ·life," and gave it as amended; and refused to give the instruction numbered 8, and in lieu thereof gave the following:

"The court instructs the jury that no man is required to retreat if the assault upon him is so fierce that his life would be endangered thereby; and that the jury in arriving at their verdict or conclusion, may take into consideration the defendant's state of health and strength and general physical condition; and, if the jury believe from the evidence that deceased was advancing on defendant with a knife drawn, and the danger of the defendant would have been increased, or his life in as great danger, by retreating, the jury will acquit."

No one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel, or from anger suddenly aroused at the time it is made, is justified or excused in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. The danger must, apparently, be "imminent, irremediable and actual," and he must exhaust all the means within his power, consistent with his safety, to protect himself, and the killing must be necessary to avoid the danger. If, however, the assault is so fierce as to make it, apparently, as dangerous for him to retreat as to

1. Homicide: When justifiable in resisting assault.

stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life or prevent a great bodily injury, slay his assailant. *Mansf. Dig., sec. 1553; Dolan v. State, 40 Ark., 459; McPherson v. State, 29 Ark., 231, 233, 234, 235; Palmore v. State, id., 267; Fitzpatrick v. State, 37 Ark., 252; Harris v. State, 36 Ark., 127; Levells v. State, 32 Ark., 589; Blackstone's Com., 4 Book, 180–185; 1 East Pleas of the Crown, 279, sec. 50; Forster's Crown Law, 273; 1 Hawkins' Pleas of the Crown, 87, secs. 13, 18; 1 Russell on Crimes, 660, 662.*

2. SAME: Same: Instruction.     The rule or doctrine insisted on by the defendant in the second instruction asked for by him, if applicable or appropriate in any case, does not apply to homicides committed in resisting assaults made upon a sudden or casual affray, or in the course of a sudden brawl or quarrel, or in a combat between persons on a sudden quarrel, or in the heat of passion suddenly aroused on the occasion they are made. It is not applicable or appropriate in this case. For there was no evidence that defendant and deceased were unfriendly at any time previous to the killing, but on the contrary, evidence was introduced conducing to prove that the relations between them were of a friendly character, and that there never had been any difficulty or ill-feeling between them; and that the assault made by Brooks in resisting which he was killed, was made in the course of a quarrel between him and defendant, and in the heat of passion aroused by defendant at the time it was made.

The instructions given by the court to the jury, construed together, while not strictly accurate in all respects, contain no error prejudicial to appellant. But appellant contends that

3. MURDER: Sufficiency of evidence.     the verdict of the jury was contrary to the evidence. Evidence was adduced in the trial conducing to prove that, previous to the time of the killing, the deceased and the defendant were on friendly terms; that just before the killing the defendant had been very sick and deceased had visited him; and that he

was reduced in strength by this sickness and was quite feeble when Brooks was killed. Only two witnesses saw the killing, the defendant and his son, Jeff Duncan.

Jeff Duncan testified, substantially, as follows: At the time of the difficulty which led to the killing he was in a dense thicket, in the bed of a lake, about fifty yards from where Brooks was killed, cutting a pole. While there he heard the defendant say to Brooks: "If you can't do what I want you to, you can quit pulling my corn." He then heard Brooks say: "G–d d–n you, you have now struck a man you cannot scare." He immediately ran to where they were, and heard no more until he reached the top of the bank of the lake. Deceased was then inside of his enclosure and a rail fence was between him and the defendant. As he went up the bank of the lake he saw the defendant step backwards, and stop in the edge of the road, about ten feet from the fence ; and, just as he, Jeff Duncan, reached the top of the bank he saw Brooks climbing the fence with an open knife in his hand. Defendant made no effort to avoid the difficulty after he stopped in the edge of the road. When Brooks reached the top of the fence he sat down and said: "Shoot, I have told you twenty times to shoot, but you have not got the nerve." The defendant raised his hand and said: "Brooks, for God sake, don't you come over that fence ; I don't want to hurt you, but will shoot you before you shall cut me with that knife." Brooks raised his knife in his right hand to or above his head, and said: "I will cut your G–d d–d heart out," and putting his left hand on the fence leaped to the ground, about two feet from the fence, and within ten feet of defendant, and as he did so defendant brought his gun from his shoulder, with the breach to his hip or thigh, fired and killed him.

The defendant testified: He had Brooks hired to assist him in gathering his crop, at the time he was killed. Taking his gun with him, he, defendant, walked down the road leading

by the house occupied by Brooks. When opposite Brooks' house he found corn cobs thrown over the fence; saw Brooks sitting at one corner of his house; went up to the fence, leaned against it and called Brooks, and told him that hogs had been getting into his field, and he wished he would not throw any more cobs over the fence; and picked up some of the cobs and threw them back over the fence. Brooks replied that he "would throw the cobs where he d—d pleased." He then said to Brooks that "if he could not do what he wanted him to do, not to pull any more of his corn." Brooks replied, "you have struck a man you can't scare." Brooks arose as he said this, and pulled out and opened his knife, and advanced towards him. As Brooks came to the fence he stepped back into the road. Brooks advanced rapidly, with his knife open in his hand. He told Brooks "that he did not want to hurt him, but he would shoot before Brooks should cut him." Brooks climbed the fence, and said he would cut defendant's heart out, and leaped from the fence with his knife in his hand; and he fired and Brooks fell. When he fired he had to throw his body back in order to get the muzzle of his gun in range of the deceased.

One witness testified that the wounds inflicted upon the deceased by appellant were in the breast and ranged upwards. Other witnesses testified, whose testimony it is unnecessary to mention in this opinion.

The evidence tended to prove that appellant did not use all the means in his power, consistent with his safety, to avoid the killing of Brooks. He was armed with a double barreled shot gun, and his son, who the evidence shows is a man of family, stood near him. The deceased, with no arms except a pocket knife, was alone. The way of safe retreat was, doubtless, open. But appellant, reinforced by his son, well armed, with a foe at his mercy, showed no disposition to retreat, but under circumstances showing an abandoned and malignant

disposition, took the life of his adversary. We think the evidence was sufficient to sustain the verdict.

Judgment affirmed.