BISHOP *v.* STATE.

Opinion delivered January 14, 1905.

1. HOMICIDE — MEDIATE CAUSE OF DEATH.—When one with a deadly weapon unlawfully inflicts upon another a dangerous wound, from which death ensues within a year and a day, he is guilty of murder or manslaughter, according to the circumstances of the case, whether the wound was the mediate or immediate cause of death, and though other causes contributed to the death, such a lack of treatment or unskillful and improper treatment. (Page 569.)

2. SELF-DEFENSE—RIGHT TO STAND ONE'S GROUND.—The rule in *Carpenter v. State,* 62 Ark. 309, that one may repel force by force in defense of person, habitation or property against one who manifestly intends and endeavors by violence or surprise to commit a known felony upon either, and that he need not retreat in such case, but may stand his ground, and, if need be, kill his adversary, is limited to cases where a murderous assault is made upon one who is free from fault in bringing on the difficulty. (Page 571.)

3. TRIAL—REMARKS OF COURT—INVASION OF JURY'S PROVINCE.—After the cause had been submitted to the jury, and they had been out considering it for two hours, they returned into court, and stated that they had not been able to agree upon a verdict, whereupon the court, over defendant's objection, said: "I should like to assist you, if I could do so properly. I always have an opinion of the facts of a case; but it is not my province to indicate my opinion to you. It is your exclusive province to settle the fact, and mine to declare

the law. However, I will say that if you agree upon the defend-
ant's guilt, and are not able to agree upon the punishment, you
may leave that to be fixed by me; but the question whether the
defendant is guilty or not is for you to say alone. I cannot assist
you in that." Thereupon the jury retired, and in a few minutes
returned a verdict of guilty, but left the penalty for the court to
fix. *Held,* that the court's remarks were prejudicial, as intimating
an opinion upon the facts. (Page 572.)

Appeal from Conway Circuit Court.

WILLIAM L. MOOSE, Judge.

Reversed.

*Sellers & Sellers,* for appellant.

The court's instruction defining the theory of self-defense
was improper. 62 Ark. 309; 64 Ark. 144. The court's remarks
to the jury when they had failed to reach a verdict was error.
58 Ark. 282; 51 Ark. 155; 104 Ill. App. 499; 131 N. Car. 73;
72 Pac. 670; 78 S. W. 930; 86 N. W. 98; 34 S. E. 1023; 34
S. E. 734. The court excluded appellant's theory of self-defense.
60 Ark. 80; 28 Ark. 160; 50 Ark. 547; 78 Ky. 268; 14 So. 327;
2 Bish. Cr. L. (6th Ed.), § 637.

*George W. Murphy, Attorney General,* for appellee.

It was appellant's duty to retreat or make an effort to with-
draw, before inflicting the fatal wound. 1 McClain's Cr. L.
§ 310; 34 Fed. 302; 64 Ark. 144; 62 Ark. 309. There was no
error in the court's final charge. 58 Ark. 227; 8 Cush. 1.

McCULLOCH, J. Appellant was indicted by the grand jury
of Conway County for the crime of manslaughter, and upon trial
was convicted of involuntary manslaughter, the jury failing to
agree upon the punishment, which was fixed by the court at a
term of six months in the penitentiary.

1. Appellant complains that the court erred in giving the
following instructions: "1. You are instructed that if you find
from the evidence that the defendant stabbed the deceased with
a knife, wounding him in the bowels, and that germs entered

the incision made by the stab or wound, and peritonitis resulted from the entrance of said germs, from which disease the deceased died, the defendant in law would be responsible for the death, although you may further find that if he had been properly treated sooner he might have recovered." It is argued that this instruction is improper in that it omits and ignores appellant's plea of self-defense; but the self-defense theory is fully and completely set forth in the other instructions, and we think the appellant was not prejudiced on that account.

It is further argued that this instruction goes too far in applying the law of proximate cause of death. Appellant raises the same question as to the testimony of a physician by whom he sought to prove that the direct cause of death was peritonitis, resulting from a germ which entered the wound inflicted by appellant. The physician who dressed the wound of deceased testified, on cross-examination, as follows: Q. "The wound would not necessarily have been fatal, if proper surgical treatment had been given?" A. "Not necessarily. Such wounds are not always fatal. If followed by peritonitis, they are fatal. Peritonitis would sometimes set in as soon as the intestines would protrude. The infection could occur instantaneously, though it does not do it every time. The fact that the delay caused the intestines to swell, necessitating the enlargement of the cavity, increased the danger of peritonitis. We also had to wash out the blood clots. The intestines had become strangulated, but probably that trouble would have been mitigated by an early treatment. I think it was something after one o'clock when I replaced the intestines. From the appearance of the wound, I judge it must have been made an hour or two before I saw it." Q. "Peritonitis is simply an inflammation of peritoneum-abdominal cavity?" A. "Yes, sir; it is from germ infection."

It has been repeatedly decided by this court that when one with a deadly weapon unlawfuly inflicts upon another a dangerous wound, from which death ensues, he is guilty of murder or manslaughter, according to the circumstances of the case, whether the wound was the mediate or the immediate cause of death, and though other causes contributed to the death, such as either lack of treatment or unskillful and improper treatment.

*Sharp* v. *State,* 51 Ark. 147; *Smith* v. *State,* 50 Ark. 545; *Kee* v. *State,* 28 Ark. 155.

Mr. Bishop states the rule thus: "Within explanations already made, if death results from the action of the wound and from medical malpractice or other independent cause combining, the law deems the wound sufficiently the cause of the death. And it need not even be a concurrent cause; much less need it be the next proximate one; for if it is the cause of the cause, no more is required." 2 Bishop, Crim. Law, § 639.

No error was committed in giving this instruction.

2. Appellant next contends that the court erred in its instruction to the effect that his plea of self-defense cannot be sustained if it appears that he could, in safety to himself, have avoided the killing by retreating.

The instruction is as follows: "You are instructed that, in order to justify the defendant taking the life of the deceased in self-defense, he must have employed all the means in his power, consistent with his safety, to have averted his danger and avoided the necessity of the killing; and if you find that he could, by retreating, have averted the danger and avoided the necessity of the killing, it was his duty to do so."

In support of this contention, counsel for appellant cite and rely upon *Carpenter* v. *State,* 62 Ark. 309, and *LaRue* v. *State,* 64 Ark. 144. In the former case Judge Battle, speaking for the court, said: "It follows that any one, under the laws of this State, may repel force by force in defense of person, habitation or property against one who manifestly intends and endeavors by violence or surprise to commit a known felony upon either; and that he need not retreat in such cases, but may stand his ground, and, if need be, kill his adversary." But the rule in these cases, and the reasons given therefor, are limited to cases where a murderous assault is made by deceased upon the defendant, and where the defendant is free from fault in bringing on the difficulty. This rule does not apply in cases where the defendant was the aggressor or provoked the difficulty, nor in cases where the assault was the result of a sudden quarrel in the heat of passion. In the same case (*Carpenter* v. *State, supra,*) the court said: "At common law, and under the statutes of this State, no one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden

rencounter, or in a combat on a sudden quarrel, or from anger suddenly aroused at the time it is made, or in a mutual combat, is justified or excused in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing." This is but declaratory of the statute. Kirby's Digest, § 1798; *McPherson* v. *State*, 29 Ark. 225; *Palmore* v. *State*, 29 Ark. 248; *Fitzpatrick* v. *State*, 37 Ark. 238; *Dolan* v. *State*, 40 Ark. 454; *Duncan* v. *State*, 49 Ark. 543.

3. After the cause had been submitted to the jury, and they had been out considering it for about two hours, they returned into court, and stated that they had not been able to agree upon a verdict, whereupon the court, after impressing upon the jury their duty to agree upon a verdict if possible, made the following oral statement over the objection of the defendant: "I should like to assist you, if I could do so properly. I always have an opinion of the facts of a case; but it is not my province to indicate my opinion to you. It is your exclusive province to settle the facts, and mine to declare the law. However, I will say that if you agree upon the defendant's guilt, and are not able to agree upon the punishment, you may leave that to be fixed by me; but the question whether the defendant is guilty or not is for you to say alone. I cannot assist you in that." Thereupon the jury retired, and in a few minutes returned into court a verdict as follows: "We, the jury, find the defendant guilty of involuntary manslaughter, and leave the penalty for the court to decide." It is contended that the court, by the language employed, expressed or intimated an opinion as to the guilt of the accused. We think that it is fairly susceptible of that construction, and that the jury could have so understood the court, and probably did so. The learned judge made it plain to the jury throughout his remarks that they were the exclusive judges of the testimony, its weight and sufficiency; but he also said to them, in plain terms, that he had an opinion upon the facts, which he could not indicate.

We think the bent of his mind upon the question of the guilt or innocence of the accused was clear to the jury when he said that he had an opinion, and immediately followed it with

this statement: "However, I will say that if you agree upon the defendant's guilt, and are not able to agree upon his punishment, you may leave that to be fixed by me;" and the fact that the problem of guilt or innocence over which the jury had disagreed was in a few moments solved by a verdict finding the defendant guilty and leaving the punishment to be fixed by the court leads to the conclusion that they were influenced, more or less, by these remarks of the court.

The words of Mr. Justice BATTLE in disposing of a similar question in the case of *Sharp* v. *State,* 51 Ark. 147, is plainly applicable here, viz: "In the midst of doubt as to what their verdict should be as to appellant, it was natural for them (the jury) to seize upon and adopt any opinion which they understood the judge to have expressed or intimated upon the question which they were required to decide."

It is entirely proper for a trial judge, and it is his duty at all stages of the deliberations of the jury, to make plain the obligation resting upon them, if possible, to agree upon a verdict consistent with the facts and the concurring individual convictions of each juror, yet, as said in *Sharp* v. *State, supra,* "any expression or intimation of an opinion by the judge as to questions of fact or the credibility of witnesses, necessary for them to decide in order for them to render a verdict, would tend to deprive one or more of the parties of the benefits guarantied by the Constitution, and would be a palpable violation of the organic law of the State."

It is unnecessary and improper for a trial judge to remind the jury that he has an opinion upon the facts, though they, of course, know that he has an opportunity, equal with them, of forming an opinion, and that he entertains one. It would be a harmless error if he went no further than that; but when he gives the jury an intimation, however slight, as to what that opinion is, he invades the province of the jury, and to that extent encroaches upon the constitutional right of the accused to a trial upon the facts by the jury.

In *People* v. *Kindleberger,* 100 Cal. 367, the trial judge, after the jury returned into court and reported their inability to agree upon a verdict, used in his charge the following language, which was held to be erroneous and prejudicial, viz.: "In view

of the testimony in this case, the court is utterly at a loss to know why twelve honest men cannot agree in this case." The court, in passing upon this remark, said: "Nothing can · be clearer than that in this charge the judge informed the jury that he had a fixed and definite conviction in regard to the verdict which they ought to return, and· that in his opinion the evidence to support such a conclusion was so plain and satisfactory that honest and intelligent jurors ought not to disagree as to its weight and effect; and we think the jury understood, or, at least, may have understood, from these unguarded remarks that in the opinion of the judge the defendant was guilty, and that such should be their verdict." That court in the opinion said further: "In a subsequent part of the charge the learned judge did inform the jury that they were the sole judges of all questions of fact and the credibility of the witnesses, and that the court had no right to trench upon their province in this respect; but the error already noticed in the previous part of the charge was not cured by this subsequent statement. The fact still remained impressed upon the minds of the jurors that it was the opinion of the judge that there ought to be no disagreement, and that the testimony would justify but one verdict." See also *State* v. *Harkin,* 7 Nev. 377; *State* v. *White,* 15 S. C. 381, 393; *People* v. *Lyons,* 49 Mich. 78; *Shorb* v. *Kenzie,* 100 Ind. 429; 11 Enc. Pl. & Pr. p. 97, *et seq.,* and notes.

We think the court erred in this statement and instruction to the jury, and for that reason the judgment is reversed, and the cause remanded for a new trial.

RIDDICK, J., (dissenting.) I am not able to concur in the opinion of the court 'that the presiding judge intimated to the jury at the trial his opinion of the guilt or innocence of the defendant. It is true that, in explaining to the jury that he could not assist them in arriving at a verdict when they differed as to the facts, he incidentally stated that he always had an opinion on the facts of the case. Now, while this would probably be true of almost any one who hears the evidence in a case, still, I admit, it was unnecessary for the judge to have made such a statement. As it was immaterial whether

he had an opinion on the facts or not, he might as well have omitted any reference to that opinion. But this statement of the judge, taken in connection with his other language, does not seem to me to indicate any opinion to the jury; and if the jury could find what the opinion of the judge was from the language as we find it in the record, they got more from that language than I can get from it. In my opinion, he not only did not communicate any opinion to the jury, but told them in language that could not be misunderstood that whatever his opinion might be it was a matter of no concern to them, as they were the exclusive judges of the facts.

For that reason, it seems to me that the decision in this case attributes to the language of the presiding judge a meaning that it does not legitimately carry, and one which he did not intend. I am, as before stated, not able to tell from the record what the opinion of the judge was on the question of the guilt or innocence of the defendant, but, judging by the fact that, although defendant was found guilty of killing another by stabbing him with a knife, the judge assessed his punishment at only six months' imprisonment, it would seem that his opinion was not very much against the defendant. The punishment inflicted was light, and on the whole case it seems to me the judgment should be affirmed. I therefore dissent from the judgment of reversal.

HILL, C. J., concurs in the dissenting opinion.