---

BLACK v. STATE.

Opinion delivered October 21, 1907.

1. HOMICIDE—THREATS.—Threats alleged to have been made by the deceased are admissible in murder trials, whether communicated or not, when there is doubt as to who was the aggres-

sor, and some evidence has been given which tends to show that the act was done in self-defense; and, when communicated, they are admissible to show defendant's motive. (Page 124.)

2. SAME—WHEN EXCLUSION OF EVIDENCE NOT PREJUDICIAL.—The exclusion in a murder case of communicated threats made by deceased is not prejudicial error where they would have thrown no additional light upon the defendant's motives. (Page 125.)

3. SAME—JUSTIFICATION.—No one, in resisting an assault made upon him in the course of a sudden brawl, is justified in taking his assailant's life unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life or to prevent great bodily injury, and has employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. (Page 125.)

4. SAME—JUSTIFICATION.—Instructions requested upon the law of self-defense were properly refused where they omitted the requirement that defendant must have employed all the means in his power, consistent with his safety, to avert the necessity of the killing. (Page 126.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Joe E. Cook,* for appellant.

The court erred in excluding the testimony showing that deceased had threatened the life of appellant, and also, when it was offered in asking the State's attorneys why they did not object, and then asking appellant's attorney: "Don't you know such evidence is improper in this case?" Appellant was further prejudiced before the jury when the trial judge asked appellant's attorney: "Do you pretend to say that when deceased was running from defendant as fast as he could, when defendant shot him, that he was the aggressor?" 54 Ark. 489; 77 Ark. 418; 75 Ark. 373; 74 Ark.. 269; 73 Ark. 569; 51 Ark. 147; 71 Ark. 38; *Id.* 65; 76 Ark. 468; 62 Ark. 156; 34 Ark. 696; 72 Ark. 436.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* for appellee.

1. It does not appear that the appellant acted under reasonable apprehension of danger to his own life, or fear of great bodily harm. The testimony as to threats was properly excluded. 34 Ark. 469; Wharton's Law of Hom. § 243.

2. That no prejudice resulted from remarks of the court is shown by the verdict, which only found the degree of the crime committed, and left the punishment to be fixed by the court.

BATTLE, J.　J. B. Black was indicted for murder in the first degree, for killing Sam Coker. The jury found him guilty of murder in the second degree, and, failing to agree as to the punishment, the court assessed it at fifteen years in the penitentiary.

In the trial of the defendant, J. L. Countz testified in behalf of the State in part as follows: "Defendant, B. Ward, Sylvester Sanders, Dave and Zeke Cooper drove along in the road to where deceased and he were standing at side of fence. Witness said 'How do you do?' and Ward said: 'Mr. Coker, I have heard I was going to be arrested, and want to know what I have done.' Coker said, 'I do not know if you have done or said anything, but I will find out,' and defendant jumped out of the wagon, and said: 'What have you got against me, Mr. Coker?' and Mr. Coker said: 'I do not know that I have anything.' Defendant started toward him like he was going to make a fight, and Coker picked up a stick of stove wood, and defendant stopped, and deceased went on down the fence toward the house talking pretty loud; did not understand what he was saying. Defendant turned back to the wagon, and said: 'Never mind, we have got one right here,' and took the shotgun out of the wagon and shot deceased."

Dave Cooper, one of the party in the wagon, testified, on behalf of the defendant, in part as follows: "Deceased lives on the public road going to Fouke, and when we got right close to the house, or just passing his house, we saw him. Ward had told me Coker was going to have him arrested, 3 or 4 of them. I never learned how many. When we saw deceased, Ward said: 'Well, I believe we ought to talk to Mr. Coker, and see whether this is so or not;' and suggested that we stop. Defendant said, 'Well, if you want to talk to him, you do the talking.' When we got to him, we all spoke, and stopped the wagon. Ward said: 'Mr. Coker, we heard that you were going to have us arrested, and would like to know what you have against us;' and says, 'If you have got anything against me, tell me what it is. We are willing to ask you, in the humblest way we know, to forgive us for anything we have done to you.' Deceased got mad, and commenced to fuss and curse, and raised his hand this way,

and says: 'God damn you, you run my boy out of the country, and I am going to have every one of you arrested that was into it that Sunday when he had the scrap.' Defendant jumped out of the wagon, and says: 'What have you against me?' Deceased then picked up a club about 18 to 24 inches long. Defendant then said: 'If you want to fight, lay down your club and fight me with your fist.' Deceased shook the stick in defendant's face, and started towards the house, saying: 'I will get my gun and kill you, God damn you!' and hollered to his daughter to bring his gun. Defendant says, 'Hold on there!' and deceased called again for his gun, and defendant jumped to the wagon, and got the gun, and grabbed a couple of shells, and tried to unbreach the gun, but it was loaded. They had loaded it when they started to shoot the hawk, and did not unload it. I looked up and saw deceased's daughter, Ollie, coming with a shotgun, and I jumped out of the wagon, as I saw something was going to happen. About the time I hit the ground gun fired, and deceased fell."

The defendant testified in his own behalf. His testimony was substantially the same as Cooper's.

During the progress of the trial the defendant offered to prove that deceased had threatened his life, and that a part of these threats were communicated to him before the killing, and while one of defendant's attorneys was discussing, before the court, the admissibility of this evidence, the judge remarked to the attorney in the presence of the jury: "Do you pretend to say that when deceased was running from defendant as fast as he could, when defendant shot him, that he was the aggressor?"

The court refused to instruct the jury at the request of the defendant as follows: 3. "Upon the law of self defense the court instructs the jury that when a person has reasonable grounds to apprehend some one is about to do him great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, he may safely act upon the appearances and kill the assailant, if that be necessary to avoid apprehended danger; and the killing will be justifiable."

"4. The jury are instructed that if you believe from the evidence in this case, or have a reasonable doubt thereof, that the defendant with friends was on the day of the tragedy on a

peaceful mission, and passed deceased's residence on the public road, which they were traveling, and that deceased was near his house on the public road; that deceased and defendant were on bitter terms; that when they passed deceased a heated conversation came up between them; that during said conversation deceased called to his daughter to bring him his gun, at the time starting to get the gun from his daughter, who was running to bring it, and defendant shot him, then defendant is not guilty, if you further find that defendant, from his standpoint, honestly believed, without fault or carelessness on his part, that the danger was urgent and pressing, and to save his life or to prevent great bodily injury he fired the shot."

"11. The jury are instructed that if you find from the evidence that, at the time the defendant shot the deceased, said deceased was then and there making a wrongful effort to shoot defendant, with good prospects of being successful, and that defendant shot deceased with the sole purpose of saving his own life at the hands of deceased, then he is not guilty."

"12. You are instructed that, while mere words will not justify an assault, if you find in this case that deceased used opprobrious and threatening words to defendant, and at the same time by his overt acts led defendant to believe that he was then and there about to carry them into execution, and the life of defendant was, or it appeared to him, in urgent and pressing danger, he had the lawful right to defend himself as a reasonable and prudent person would do under similar circumstances."

No prejudicial error was committed in the refusal to permit the defendant to prove that threats were made against him by the deceased, nor in the remark made by the court when the attorney was discussing their admissibility. Threats in trials for murder are admissible "when there is doubt as to who was the aggressor, and some evidence has been given which tends to show that the act was done in self defense," and when communicated to show defendant's motive. *Lee* v. *State,* 72 Ark. 436, 439. The undisputed evidence in the case shows that the deceased was not the aggressor at the time he was killed. The threats could not have thrown any additional light upon the motives of the defendant.

The court properly refused to give instructions asked. The following is the law of this case: "No one, in resisting an as-

sault made upon him in the course of a sudden brawl or quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel or from anger suddenly aroused at the time it is made, is justified or excused in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of killing. The danger must apparently be 'imminent, irremediable and actual,' and he must exhaust all the means within his power, consistent with his safety, to protect himself, and the killing must be necessary to avoid the danger." *Duncan* v. *State,* 49 Ark. 543, 547.

If an assault was made upon the defendant by the deceased, it was from anger aroused at the time it was made. Deceased was unprepared for the encounter. Yet in none of the instructions refused was the court asked to instruct the jury that, before they could acquit, it was necessary for them to find that defendant employed all the means in his power, consistent with his safety, to avert the necessity of the killing. There was evidence to show that he did not.

Judgment affirmed.