Roe Rice & Land Co. *v.* Strobhart.

Opinion delivered March 27, 1916.

TRIAL—ISSUE OF FACT—EXPRESSIONS OF OPINION BY TRIAL JUDGE.—Where the question is in issue whether a writing constituted the contract of the parties, it is reversible error for the trial judge, during the progress of the trial, to express his opinion, in the presence of the jury, on that issue.

Appeal from Monroe Circuit Court; *Thos. C. Trimble,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant brought this suit against the appellee to recover the possession of certain livestock, machinery, etc., described in the complaint, alleging that it was the owner of the same, and that the appellee wrongfully detained it under a false claim of ownership, with all the necessary allegations for a complaint in replevin. The value of the property was alleged to be $1,652.25.

Appellee denied the allegations of the complaint, and set up that he owned the property under a written contract and bill of sale, which was made an exhibit and introduced in evidence, and which is as follows:

"January 16th, 1914.

"I hereby agree to sell to Mr. R. S. Strobhart the stock, machinery and tools on our farm, located two miles south of Roe, Arkansas, for the sum of $2,230.00, including everything on the place, except tools belonging to the plant and the threshing machine and engine. The engine and threshing machine belong to the Roe Rice & Land Co. We reserve the right to use the center aisle of the machine shed for our threshing machine and engine. Mr. Strobhart agrees hereby to release Dr. C. A. Meredith of contract to deliver to him one team of mules which were contracted for in the sale of our farm, same sale was made in December, 1913; Mr. R. S. Strobhart agrees to accept this deal at the above named figures, $2,-230 and pay at the close of this contract one-third of this amount which is $743.33, and the balance in two payments of $743.33 each; the first deferred payment to be made on

January 1, 1915, the second deferred payment to be made on January 1, 1916, the two deferred payments to bear interest from date at the rate of 6 per cent. per annum, the deferred payments to be secured by his share of the rice crop each year. Mr. R. S. Strobhart agrees to lease our rice farm of 160 acres for the purpose of raising rice for the term of five years. He agrees to furnish one-half of the seed rice, one-half of the rice bags, and one-half of the machine bill at threshing the crop, at the rate of .04 per bushel and deliver our half of the crop on board the cars at Roe, Arkansas, when the proper time comes to sell the crop at any time after threshing is done.

"We, the Roe Rice & Land Co., agree to lease to Mr. R. S. Strobhart the 160 acres of land for the term of five years for the purpose of growing rice. We agree to furnish the pumping plant in running order and keep it so, and furnish the water for the rice crop.

"We, the Roe Rice & Land Co., reserve the right to enter upon our land at any time we see fit to inspect same. We, the Roe Rice & Land Co., also reserve the right to sell this land at any time during the life of this lease and to sell this lease with the land. We also give R. S. Strobhart an option to buy this land at any time he wishes, but this option shall not stop us from offering this land for sale should we get an offer on this land at any time during the life of this lease. We agree to submit the offer to Mr. R. S. Strobhart for him to buy at the price offered or to give us the right to sell at the price offered; this sale to be made subject to the lease of R. S. Strobhart during the five years. We ask the right to use the fan mill to clean our rice and to the use of the teams to haul balance of our rice (now in small house) to the cars when we make a sale of same; all machine canvass on the place belonging to the threshing machine.

"I give this bill of sale to Mr. R. S. Strobhart for the stock and machinery on the place and Mr. R. S. Strobhart is to release all claim on the team of mules which was

contracted for at the sale of our one-half of the farm, which sale was made in December, 1913.

"I do this in full authority in writing from Dr. C. A. Meredith as president of the Roe Rice & Land Co. The full amount of $2,230; first payment to be made at the close of this contract, which is one-third, being $743.33, balance two deferred payments to be made as afore-mentioned in our contract, earnest money, cash $5.00, receipt of which is hereby acknowledged.

(Signed) Henry W. Halwe,

Treasurer of the Roe Rice & Land Co.

Witness: Herman Wilke.

"I accept this five year lease from the Roe Rice and Land Co. of Missouri of their 160 acres of rice farm land in Monroe County, Arkansas, as described in the above contract; also bill of sale of their stock and machinery.

(Signed) R. S. Strobhart."

Appellant asked judgment for $1,652.25, for the value of the property, and damages in the sum of $3,500.00 for for the detention of his property.

The facts are substantially as follows: Appellant was a foreign corporation, having its office in St. Louis, Missouri. It owned 320 acres of land in Monroe County on which, for several years, it had been engaged in raising rice, and also owned the personal property in controversy in this suit. The stock of the appellant was owned by Dr. C. A. Meredith and H. W. Halwe, except one share which was owned by one Mueller. Meredith, the president, and Mueller, the secretary, resided in St. Louis, and Halwe, who was treasurer and manager of appellant, resided on the farm.

In December, 1913, appellee Strobhart bought 160 acres of the land of appellant, on which was situated the improvements. The negotiations were conducted on the part of the appellant through its president, Meredith. Meredith then made an effort to lease the other 160 acres to Strobhart, and also to sell him the livestock and farm-

ing implements on the place, with the exception of the threshing machine, and to this end wrote Strobhart a letter, in which, among other things, he says: "So it would be impossible to rent you the farm unless some agreement could be made to take over the machinery and stock. * * * I am sure if any such arrangement is to be made as we are contemplating, it must be done at once. Therefore I would suggest you go down tomorrow night if Mrs. Strobhart is well enough for you to leave. I am willing to accept any arrangement you and Mr. Halwe may agree to. * * * I will write Halwe this evening that you may be down leaving tomorrow night."

Strobhart, who lived in St. Louis, went to Roe, in Monroe County, and he and Halwe entered into the agreement under which the appellee claims title to the property. Strobhart paid the $5.00 mentioned in the contract as earnest money.

Halwe testified, on behalf of the appellant, that he told the appellee at the time the agreement of January 16th was presented to the appellee that the statement covered what he (Halwe) was willing to do, but that he (Strobhart) would have to close the deal with the officers of the company at St. Louis; that as treasurer of the company his duties were confined to keeping the accounts and records of the company, receiving the earnings of the company and paying claims against the company when they had been approved by the board of directors; and that there had been no meeting of the company with reference to the sale of the personal property and lease of the land prior to Strobhart's visit to Roe. He also testified that he was general manager for the company in Arkansas, bought and sold personal property for the company, but never made a sale without first taking it up with the company.

The witness was then asked this question: "Didn't you make a deal for the stuff?" and answered, "I did not." He was then asked: "You were helping them in buying it, were you not?" Whereupon the appellant objected, and the court remarked: "I don't see that any

corporation can form a corporation and put a man down there and buy and sell and take charge of it and then get out of it by claiming that the agent did it.'' The appellant excepted to the remarks of the court.

Halwe further testified that he first signed the contract as an individual, and then, at Strobhart's request, added the word ''Treasurer.'' And, also under Strobhart's dictation, he wrote the words, ''I do this in full authority in writing from Dr. C. A. Meredith as president of the Roe Rice & Land Co.'' The witness then stated that he regarded the contract as a statement. The court at this juncture, said: '''I will instruct the jury that it is a regular contract,'' and the appellant duly excepted to the remarks of the court.

The appellant asked the witness if he had any authority from the board of directors of the Roe Rice & Land Co. to execute that paper. But the court, over the objection of appellant, refused to permit the witness to answer the question.

It was shown on the part of the appellant that at a meeting of the directors of appellant on January 29, 1914, the offer made by Strobhart as contained in the instrument set out was rejected. The witness stated that the understanding between him and Strobhart was that he should take the agreement of January 16, 1914, to the appellant, and that upon the approval of Meredith and Mueller the papers would be made out; that Strobhart dictated all that portion in regard to the leasing, saying that that was the way Meredith wanted it; that Strobhart did not present to him the letter he had from Meredith, but stated to witness that Meredith was willing to accept any arrangement that Strobhart and Halwe might come to; that he never sold or attempted to sell, at any time any of the personal property of the plaintiff company and did not sell the products of the farm except upon authority from the directors; that the property involved included all of the personal property owned by plaintiff except the threshing machine.

The appellee in his own behalf, testified that after the contract was signed he took possession of the stock and machinery and began the cultivation of the rice; that Halwe was representing the appellant and was running the place for it down at Roe; that after the contract was signed, witness went back to St. Louis, and everything was turned over to witness and Dr. Meredith knew it; that he had the use of the stock, machinery, etc., until this suit was brought, since which time appellant had had possession of the stock. He stated that Meredith told him to come to Arkansas and make a contract with Halwe and that it would be all right with the company. Halwe and witness made the arrangements, and then witness went back to St. Louis and notified Dr. Meredith that he and Halwe had made the contract, and showed the same to Meredith, and Meredith stated that he would not sign that contract in five years. Witness made a tender of the money called for in the contract to Dr. Meredith and he refused to accept it. Witness went down to Roe to look over the machinery and see whether he would accept it. He went down there to see whether the property was like they said and to agree with Mr. Halwe on terms, if possible, and he did accept the stock and the price. It was understood that if Halwe fixed a price that was satisfactory to witness that it was a trade.

The appellant offered prayers for instructions, which it is unnecessary to set out at length, in which they asked to have the issues submitted to the jury as to whether or not the instrument under which appellee claims was the contract of the appellant and binding upon it as such, or whether or not it was understood by both parties as simply an offer made by Halwe individually which had to be submitted to and approved or ratified by the appellant before it would be binding upon it, and as to whether or not such was the understanding between Halwe and the appellee. The court refused these requests for instructions.

The above sufficiently sets forth the rulings of the court for the purposes of the opinion. The jury returned

a verdict in favor of the appellee awarding him $1,652.25 for the value of the stock and $500 damages for loss of the use of the property while in appellant's possession. Appellant seeks by this appeal to reverse this judgment.

*Manning, Emerson & Morris,* for appellant.

1. The remarks of the court were improper, highly prejudicial and constitute reversible error. Const. Art. 7, § 23; 51 Ark. 147-158; 73 *Id.* 568, 573.

*G. Otis Bogle* and *C. F. Greenlee,* for appellee.

1. Neither the remarks of the court nor counsel were prejudicial. 103 Ark. 359; 89 *Id.* 87; 90 *Id.* 398; 100 *Id.* 437; 74 *Id.* 256; etc.

WOOD, J., (after stating the facts). During the progress of the trial the court made remaks (in addition to those set out in the statement) while evidence was being adduced concerning the instrument under which appellee claims, as follows: "the instrument was a regular contract;" "We will accept the contract in preference to an imaginary theory;" "Did he come down there to do what he did, to make that agreement to buy that property;" "He (Strobhart) says he accepted that, the written instrument, and it was the terms."

These remarks were contrary to section 23, article 7 of the Constitution, and invaded the province of the jury. *Sharp* v. *State,* 51 Ark. 147-58; *Bishop* v. *State,* 73 Ark. 568-73.

The controlling issue in the case was, whether or not the written instrument under which appellee claimed to be the owner of the property in controversy was the contract of appellant. Under all the evidence in the case this was an issue for the jury, which the court should have submitted without such comments. Necessarily the jury must have concluded that in the opinion of the court the instrument under which the appellee claimed was a contract binding on the appellant.

All these remarks were improper, highly prejudicial to appellant and constitute reversible error. They indicated the opinion of the trial judge on the issue of fact

which should have been submitted under appropriate instructions. The court by its ruling in the exclusion of certain evidence, and the remarks made when ruling thereon, and in the giving and refusing of prayers for instructions, proceeded with the trial under a misapprehension of the effect of the written instrument. There was evidence from which the jury might have found, on correct instructions, that Halwe the agent of appellant had no authority, express or implied, to bind appellant by the instrument which he executed and which is the basis of appellee's claim, and also there was testimony from which the jury might have found that the making of such a contract was not within the apparent scope of Halwe's authority.

It is unnecessary to set out and discuss specifically the rulings upon the prayers for instructions. The principles of law applicable to the facts of this record are familiar and have been repeatedly announced by this court.

The judgment, for the errors indicated, is reversed and the cause is remanded for new trial.