CHICAGO, R. I. & PAC. R. R. Co. *v.* RACHEL ADAIR ET AL

5-3962                                       407 S.W. 2d 930

Opinion delivered November 14, 1966

*Wright, Lindsey & Jennings,* for appellant.

*McMath, Leatherman, Woods & Youngdahl,* for appellee.

## INTRODUCTORY FACTS:

OSRO COBB, Justice. Appellant railway company serves Wheatley, Arkansas, a point located between Little Rock, Arkansas, and Memphis, Tennessee. Williams Grain Company has a very large grain storage and processing facility at Wheatley, which is served by appellants' spur track. The spur accommodates two or three other manufacturing plants and crosses U. S. Highway No. 70, a heavily traveled main highway, although limited to a single lane in each direction in the Wheatley vicinity.

On October 23, 1963, at approximately 7:00 p.m., and well after sunset, appellants in the course of their switching operations on the Williams Grain Company section of the spur, improvidently moved and stopped its boxcars in a position crossing Highway No. 70 so as to completely block the flow of traffic in each direction. No flagman or warnings of any kind were provided by appellants. Indeed the train conductor testified that in the switching operation they unintentionally overshot their mark, blocking the highway. No other member of the train crew was called as a witness by either party.

E. B. Adair, plaintiff in the original action, was driving his 1963 Ford automobile eastwardly on Highway 70. The vehicle crashed into the boxcar which was blocking the highway. Suit was brought for his injuries. Prior to trial, Adair died and the case was revived and prosecuted by his widow, Rachel Adair, as administratrix. Upon trial the jury returned a verdict for substantial damages and judgment was entered thereon.

Appellants have prosecuted an appeal urging some six points for reversal. We limit our discussion to appellants' Point IV, as our decision on this point is dispositive of the case.

*Appellants' Point IV—The Court erred in commenting upon the weight of the evidence.*

All of the record in this case relating to this point was made during the course of the testimony of eyewitness Daniel Heath. Appellants seasonably made objections to certain testimony of the witness and to remarks made by the court in the presence of the jury.

We quote the pertinent parts of the record:

"Q.  Where was the boxcar?

"A.  On the highway crossing and I almost hit it and my sister-in-law said—

"MR. JENNINGS:  I object to what his sister-in-law said.

"THE COURT:  The objection is sustained.

"Q.  Was the freight car moving at the time?

"A.  No, sir.

"Q.  Did you hear the bell ringing?

"A.  No, sir.

"Q.  While you were sitting there did you hear the whistle blowing?

"A.  No, sir.

"Q.  Were there any lights at the crossing?

"A.  No, sir.

"Q.  Was there a watchman at the crossing?

"A.  No, sir.

"Q.  Then after it hit what happened?

"A.  One door flew open on the car, on the driver's side and the man's legs came out and his feet was on the pavement and I thought they was maybe dead. * * * I went immediately to the

closest phone and called for an ambulance and the police.

"Q. While you were down there did you see anybody representing the railroad?

"A. Not before I went to call.

"Q. After you came back?

"A. When I came back there was two men walking down the track from toward this grain dryer with lights in their hand and when they walked up one of them made the remark—

"MR. JENNINGS: I object to any unidentified person's remarks.

"THE COURT: The objection is sustained.

"Q. How did you identify them as being with the railroad?

"A. They had lanterns in their hands.

"Q. What did they do?

"A. They came up and seen what had happened and they asked for the train to pull up and clear the highway.

"Q. At that time did they make a remark?

"A. One of them said—

"MR. JENNINGS: He may answer whether or not a remark was made but I object to what the remark was.

"THE COURT: Did they make a remark?

"A. Yes.

"THE COURT: Do you intend to ask him what the remark was?

"MR. McMATH: Yes, sir.

"THE COURT: Do you object to that?

"MR. JENNINGS: Yes, sir.

"THE COURT: The objection is overruled.

"MR. JENNINGS: There has been no identification of who the persons were; and certainly not that they were in any position to speak for the railroad company or Mr. Rosell.

"THE COURT: *The court holds that they were employees of the railroad company and that they asked that the train be moved.* (emphasis supplied)

"MR. JENNINGS: We object to that.

"MR. WOODS: We think it is a part of the res gestae, it was immediately after the accident happened and they were discussing the movement of the train.

"THE COURT: The objection is overruled.

"Q. Tell the jury what these people with the lantern said?

"A. One of them said, 'It looks like I really messed up and good this time,' and the other one said 'we sure did'."

It simply cannot be said that from the meager testimony concerning the two men with lanterns that their status as employees of appellant railroad had been conclusively established. Indeed this was a material fact question for the jury in determining the weight to be given to the statements of the men with the lanterns.

The statement of the court in the presence of the jury was not merely a comment on the evidence but constituted a disposition by the court of this material fact question. Appellants argue that the statement of the court removed from the jury's consideration any issue

of whether the men were in fact railroad employees, but that it also placed the court's stamp of truth upon the testimony of Daniel Heath concerning the employment of the persons and the actions taken by them, so that when Mr. Heath testified immediately theraefter one of the men said ''it looks like I really messed up and good this time,'' and the other one said ''we sure did''; the jury was justified in concluding that Heath's testimony in this regard was also true. Appellants insist that the practical effect of the remarks of the court was to instruct the jury that the appellant railroad had admitted that the collision was its fault.

We agree, in large measure, with appellants. The remarks of the court did tend to irrevocably fix in the minds of the jury that the railroad was at fault, causing or contributing to the accident and Adair's injuries, but the question of equal or greater fault upon the part of others at interest in the litigation was left open. The damage to appellants was not cured by any subsequent action of the court.

§ 23, Article VII, Constitution of the State of Arkansas, provides:

''Charge to juries—Judges shall not charge juries with regard to matters of fact, but shall declare the law and in jury trials shall reduce their charge of instruction to writing on the request of either party.''

This court has consistently held, in a great many cases involving the constitutional injunction against comments by trial courts on questions of fact, that same constitutes clear reversible error. See *Arkansas State Highway Commission* v. *Suddreth,* 239 Ark. 359, 389 S. W. 2d 423 (1965); *Cameron* v. *State,* 214 Ark. 512, 216 S. W. 2d 881 (1949), from which we quote:

''Under our constitution (Art. 7 § 23) judges are forbidden to charge juries as to the facts; and we

have held that for a trial judge to communicate to the jury in any way his opinion, as to the merits of the contention of either party on a fact question, is error. *Hinson* v. *State,* 133 Ark. 149, 201 S. W. 811; *Williams* v. *State,* 175 Ark. 752, 2 S. W. 2d 36.''

In *Western Coal & Mining Company* v. *Kranz,* 193 Ark. 426, 100 S. W. 2d 677 (1937), we said:

''No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other.''

See also *Roe Rice and Land Company,* v. *Strobhart,* 123 Ark. 146, 184 S. W. 461 (1961).

In *St. Louis Southwestern Railway Company* v. *Britton,* 107 Ark. 158, 154 S. W. 215 (1913), we said:

''The requirement of Art. 7 § 23 of our Constitution, that 'judges shall not charge juries with regard to matters of fact,' applies as well to the credibility of witnesses and the weight to be given their testimony as to the outright truth or falsity of what they say.''

We have therefore concluded that this case must be reversed and remanded for a new trial, and it is so ordered.

Reversed and remanded.