POPE v. STATE.

Opinion delivered November 8, 1926.

1. HOMICIDE—MURDER IN SECOND DEGREE—EVIDENCE.—Evidence *held* sufficient to sustain conviction of murder in the second degree for cutting and stabbing deceased with a knife.

2. HOMICIDE—JURY QUESTION.—Conflicts in the testimony as to whether defendant or deceased was the assailant *held* for the jury.

3. CRIMINAL LAW—INCOMPETENT EVIDENCE—HARMLESS ERROR.—An incompetent answer by a witness in a prosecution for murder, not

responsive to the question asked, *held* not prejudicial where it was excluded on objection by defendant.

4. HOMICIDE—GENERAL REPUTATION.—A witness testifying that the general reputation of deceased was both good and bad cannot be questioned as to the details of the life of deceased having no relation to the killing, and an inquiry as to whether deceased's reputation was good among wealthy planters and bad among the poorer classes was properly excluded.

5. CRIMINAL LAW—CONDUCT OF COUNSEL—ACTION OF COURT.—Where the prosecuting attorney interrupted a witness who was being examined by defendant's counsel by directing him to tell what he knew and not what he believed, an instruction not to consider such remark cured any error.

6. WITNESSES—IMPEACHMENT OF ACCUSED ON CROSS-EXAMINATION.— In a prosecution for murder, cross-examination of defendant as to whether he had not cut other men, and one man in particular, which defendant admitted, was proper to test his credibility as a witness.

7. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—In a prosecution for murder it was proper to instruct the jury that, if defendant armed himself with intent to kill deceased, and brought on a difficulty, the defendant could not invoke the law of self-defense, unless he abandoned or attempted to abandon the difficulty before striking the fatal blow.

8. CRIMINAL LAW—MODIFICATION OF INSTRUCTION AS TO SELF-DEFENSE. —A requested instruction on self-defense was properly modified by striking out as argumentative the statement that "in a contest betwen a powerful individual and a weaker, the necessity of taking life in self-defense will be more apparent and easily discovered."

Appeal from Clark Circuit Court; *J. H. McCollum,* Judge; affirmed.

*McMillan & McMillan,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. Appellant was convicted of the crime of murder in the second degree, under an indictment charging him with the crime of murder in the first degree, alleged to have been committed by cutting and stabbing one Newt Nelson with a knife.

One of the errors assigned for the reversal of the judgment is that the testimony is insufficient to support

a conviction for murder in any degree. This assignment of error may be answered by giving the version of the killing which Charles Anderson detailed to the jury. According to this witness, he and deceased were covering a house, when appellant walked up to where they were working, but said nothing. A stepson of the witness asked appellant if there was anything he wanted, when appellant said he wanted nothing, and walked away. Appellant went to town, and, in about half-an-hour, returned, and called to deceased, and stated that he had received a letter which he wanted deceased to read to him. Deceased climbed down from the house and proceeded to read the letter, which had been written to appellant by Bill Meador, who owned the farm on which both appellant and deceased lived. The landlord resided in another county. This letter stated that the writer had been advised that appellant, who was a sharecropper, had not fairly divided the corn grown by him when he gathered it, and, when this letter was read, appellant accused deceased of writing the letter to their landlord which had advised that appellant had not fairly divided the corn. Deceased denied writing to Mr. Meador, but appellant persisted in asserting that deceased had done so, when deceased said, "No sir, I will swear that I did not write the letter." As deceased made this remark appellant drew and opened his knife, and, when witness saw this, he yelled, "Run, Uncle Newt, Mr. Pope's going to cut you," and he saw Pope strike deceased in the back, and deceased ran, and was soon out of the range of witness' vision. When witness saw that appellant was about to assault deceased, he commenced climbing down from the roof of the house where he was working, but, before he could reach the parties, the "fight," as he called it, was over, and deceased was staggering down the hill from the house and appellant was walking rapidly away.

Surgeons who attended deceased testified that there were ten wounds on the body. One was across the right wrist, there was a cut in the thigh, one in the right side over the kidney, there were stab wounds in the breast,

and on the stomach, and the remainder of the wounds were in the back.

It was shown that appellant purchased, on the day of the difficulty, the knife with which deceased was killed. There was also testimony to the effect that there was bad blood between the men, and each had made threats against the other.

We think this testimony sufficient to support the verdict returned by the jury.

The testimony on the part of appellant was to the effect that he was assaulted by deceased, and that he attempted to retire from the difficulty, and that he finally cut deceased in his necessary self-defense. But these conflicts in the testimony were, of course, questions for the jury.

It is assigned as error that the court permitted witness Dickey to make erroneous and prejudicial statements in the presence of the jury. This witness was a white man, and so is appellant, while deceased was a colored man. This witness testified that appellant had made threats of violence against deceased. He also testified that deceased was a quiet and peaceful man. The witness was cross-examined at length concerning the sources of the information upon which his opinion that deceased's reputation was good was based. He was interrogated concerning the statement which he had made to the effect that he would not believe anything bad about deceased if a dozen witnesses testified to that effect, and he was interrogated concerning the time and place when and where he had heard appellant make threats against deceased, and the witness answered that "The day before Newt was killed he came to my house—his mailbox is in front of my house, and I saw him coming up to the mailbox, and it was raining, and the mail rider happened to come along, and I called him and told him to come in, I wanted to see him, and I told him about the threats Ed had made. I says 'Watch that man; I know that man,' and I says 'He'll grab you some day and cut you all to pieces.'" Counsel for appellant

objected to this answer, and stated that he had not asked the witness to relate the conversation between himself and deceased. The court inquired, "What did you ask him?" Counsel for appellant answered, "I asked him where it was he had the conversation with Ed Pope." The court then directed the witness to answer that question, and the witness replied, "I told him, Judge, as near as I can, where." Counsel then said: "I want to ask that this statement of the conversation with Newt be excluded," and the court replied: "Very well. It will be excluded." It is insisted that the statement of the witness, set out above, was voluntary, was not responsive to the question asked, and was highly prejudicial, and that the prejudice of the remark was not cured by the ruling of the court.

It is true, of course, that it was incompetent for the witness to detail his conversation with deceased and the advice he gave him about watching appellant, but the witness was being closely cross-examined touching threats which he had testified were made by appellant and with the obvious purpose of discrediting the witness. The question asked by the court indicated that the court was not clear as to the scope of the question, and the answer given by the witness, after the question was explained to the court by counsel, indicated that the witness thought he had answered the question asked. This answer was, of course, broader than the question, and included the incompetent conversation between witness and deceased, but the entire answer was excluded, upon motion of counsel for appellant that this be done. We hold therefore that, while the testimony was incompetent, the prejudice was removed by its exclusion. *Mo. Pac. Rd. Co.* v. *Keller*, 168 Ark. 626, 271 S. W. 7; *Hale* v. *State*, 146 Ark. 580, 226 S. W. 527.

Appellant called one Dave Anderson to testify concerning the general reputation of deceased. This witness testified that he knew the reputation of deceased for being a quarrelsome and arbitrary man, and that his reputation was both good and bad. He testified that

he had heard some people say it was bad, while others said it was good. The witness was then asked if the people who said deceased's reputation was good were not the wealthy planters. An objection to this question was sustained, and this ruling is assigned as error.

It is the insistence of appellant that the showing could have been made, had the court permitted it to be done, that deceased had a dual reputation, that among well-to-do persons and persons of influence deceased was polite and obsequious, while his attitude towards white people of the poorer class and towards colored people was overbearing and offensive.

We think no error was committed in the ruling made. The court permitted the introduction of testimony tending to show the general reputation of the deceased, and it is this which may be shown. Many circumstances may, collectively, make up this reputation, but it is the sum total of them all, or the general reputation, which may be shown. It was not proper therefore to inquire into the details of the life of deceased having no relation to the encounter which caused his death, and the inquiry was therefore properly confined to the general reputation of the deceased.

At § 222 of the chapter on ''Homicide,'' in 13 R. C. L., page 919, it is said: ''Where character evidence is offered in support of the contention that the deceased was the aggressor, or to characterize and explain his acts, the defense is restricted to proof of general reputation in the community where the deceased lived, and may not show particular acts or conduct at specified times. It may not be shown that the deceased had engaged in frequent fights in which he used deadly weapons, and therewith made deadly assaults on his antagonists. But, on the issue whether or not the accused had reasonable ground to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased. But in no case may a witness state his opinion of the character of the deceased or

how the latter would have acted under any particular set of circumstances."

It is insisted that prejudicial error was committed by the prosecuting attorney in lecturing A. E. Jackson, one of the eye-witnesses to the encounter, who was called as a witness for appellant. Counsel for appellant asked this witness the following question: "When they quit (fighting), what was done by either or both of them?" The witness answered: "Well, when they quit, Mr. Pope ran across the track, and I believe the negro threw at him, maybe—" The prosecuting attorney interrupted the witness with the remark, "Wait a minute. We want you to tell what you know about him, not what you believe." Counsel for appellant objected to the interruption of the witness and to the lecturing of the witness by the prosecuting attorney, and asked that the statement of the prosecuting attorney be excluded from the record and the jury told it was improper. The court responded to this request of counsel by saying, "I will tell the jury they will not consider the statement of the prosecuting attorney made to the witness." We think this ruling cured the error, if any there was, in the remark of the prosecuting attorney.

On the cross-examination of appellant he was asked if he had not cut other men, and particularly if he had not stabbed a man named Crow, and the witness answered that he had. Exceptions were saved to these questions and answers. There was no error in this ruling. Such testimony was held competent in the recent case of *Whittaker* v. *State,* 171 Ark. 762, it being there held that it is within the discretion of the trial court to permit, within reasonable limits, an inquiry, on cross-examination, into the character and antecedents of the defendant for the purpose of testing his credibility as a witness, when the examination is limited to such antecedents as throw light on the credibility of the witness.

The court gave, over appellant's objection, an instruction numbered 11, which reads as follows: "If you believe from the evidence in this case, beyond a

reasonable doubt, that the defendant, armed with a deadly weapon, sought the deceased with the felonious intent to kill him, or sought or brought on, or voluntarily entered into, the difficulty with the deceased, with the felonious intent to take his life, then the defendant cannot invoke the law of self-defense, no matter how imminent the peril in which he found himself placed, unless the defendant abandoned or attempted to abandon the difficulty before the fatal blow was struck.''

It is objected that this instruction assumed that defendant armed himself with a knife, and that the knife was a deadly weapon, and tells the jury, after so assuming, that appellant could not invoke the law of self-defense unless he abandoned or attempted to abandon the difficulty before the fatal blow was struck.

We do not think the instruction open to the objection made to it. On the contrary, the instruction submitted the question to the jury whether appellant had armed himself with a deadly weapon and had sought out deceased with the previous intent to kill him, or had brought on or had voluntarily entered into the difficulty, and the testimony on the part of the State warranted the submission of these questions. Having submitted these questions, the instruction told the jury that, if there was an affirmative finding, appellant could not invoke the law of self-defense unless he had abandoned or had attempted to abandon the difficulty before the fatal blow was struck. This instruction correctly declared the law, as has been stated by this court in several decisions.

The court refused to give, at appellant's request, an instruction numbered 3, which reads as follows: ''If you believe from the evidence that the killing was done by Ed Pope while defending himself against an attack by Newt Nelson, it is your duty, in deciding upon the character of the defense, to carefully examine and consider all the circumstances of the difficulty, the true situation of the parties at the time, their respective feelings and intentions as shown by their acts, their threats and their relative strength and power (because, in a contest

between a powerful individual and a weaker, the necessity of taking life in self-defense will be more apparent and easily discovered)." The court refused to give this instruction as requested, but amended it by striking out the portion inclosed in parentheses.

We think no error was committed in thus modifying the instruction, because the part stricken out was argumentative in form. In the case of *Prewitt* v. *State,* 150 Ark. 279, 234 S. W. 35, an instruction was asked which contained almost the identical language which was stricken from the instruction in the instant case. In the Prewitt case, *supra,* the instruction was not modified, but was refused, and we said this was not error, and in so holding we said: "The instruction was argumentative in form. It was, of course, proper for the jury to consider the circumstances there recited, but this court has said in many cases that it is not good practice to single out and specially direct the attention of the jury to particular circumstances, thereby appearing to emphasize the circumstances named."

Upon a consideration of the whole case we find no error prejudicial to defendant, and the judgment will therefore be affirmed.