MONTAGUE *v.* STATE.

4500                                            211 S. W. 2d 879

Opinion delivered May 31, 1948.

Rehearing denied June 28, 1948.

*Wils Davis, Eugene Sloan* and *Arthur L. Adams,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J.   Appellant, Walter Montague, was charged with murder in the first degree by shooting a Negro, Ralph Donaldson, with a thirty-eight calibre pistol and killing him.   He was convicted of murder in the second

degree and his punishment assessed at twenty-one years in the State Penitentiary. From the judgment is this appeal.

For reversal, appellant has set out in his motion for a new trial thirteen assignments of alleged errors, which he has grouped in the following propositions:

"1. The trial court committed reversible error in excluding evidence, offered by the defendant, tending to show the violent, turbulent character of deceased, known to defendant and impelling him to act in his own self-defense.

"2. The trial court committed reversible error in admitting in evidence, over the objection and exception of defendant, (the State's cross-examination) regarding separate and distinct offenses of defendant, disconnected in time, place and occasion from the offense charged.

"3. The trial court committed reversible error in permitting counsel for the State to engage in unrestricted, inflammatory argument, not supported by any competent evidence, reflecting upon the family of defendant, and of his counsel, and calculated to prejudice the jury. All of this was done without admonition or caution to the jury by the trial court."

Before considering these "propositions," which we shall presently do in their inverse order, we examine assignments 1, 2, 3, and 11, which, in effect, challenge the sufficiency of the evidence. Appellant admitted that he killed the deceased, but claimed that he did so in his necessary self-defense.

Appellant's victim, Ralph Donaldson, at the time he was killed, was 28 years of age, had been married about 7 years, and had one child about four weeks old. He was of slender build and weighed about 140 pounds. His wife testified that on September 21, 1947, at about 7:15 p. m., Gladys and Byrnis Montague, sister and brother of appellant, drove to the home of the deceased and asked for him. Ralph had worked until 12 o'clock the preceding night, had gone to bed at 2:30 that afternoon and was still

in bed. He got up, put on a khaki shirt and trousers, and after Gladys told him appellant wanted to see him at his office, Ralph went off in the car with them. His wife never saw him again until she viewed his body at Gregg's Mortuary. The deceased had worked for appellant since his marriage, or for about 7 years, but had quit working for him approximately two days before he was killed.

W. E. Robbins, a police officer, testified that he, in company with Officer Cole, went to appellant's office a few minutes after the shooting: "Q. When you got there, who was present? A. Mr. Walter Montague, Mr. Byrnis Montague and Miss Gladys Montague. . . . Q. Where was Walter Montague when you went in? A. He was about four feet from the head of the man that was shot, sitting in a chair. . . . Q. Behind the desk in a chair in the front part of the office? A. Yes, sir. . . . A. Well, he (Ralph) was hardly dead yet. He was gasping for breath, and his eyes were fluttering. He was dying. . . . A. I asked who shot the Negro. Mr. Walter Montague said he had—Mr. Walter Montague said 'I did.' And I said 'It looks like you have killed you a man, Mr. Montague' and he replied, 'I hope I did.' . . . Q. When you walked into the office there did you see anything on the floor about the body? A. No, sir; not any gun or knife on the floor. . . . Q. Tell this court and jury what Walter Montague had to say about this Negro having a knife. A. He didn't say a word to me about him having a knife. No mention was made about him having a knife at all. Q. Tell this jury what Walter Montague, Byrnis Montague, or Gladys Montague had to say about this Negro attacking Walter, or any other Montague. A. They didn't say anything to infer he had made any movement to attack anyone.''

Officer Cole corroborated Robbins' testimony.

Gladys Montague testified (appellant's brief): "Byrnis and Gladys took Ralph Donaldson to office. Witness went in first, sat down back of desk. Ralph went in second and sat on stool, Byrnis came in and sat down on edge of desk. Walter went over and sat down in chair.

Did not force Ralph to go. Ralph went voluntarily. Was no design to take his life," and "A. Walter said 'Ralph, didn't you tell me that Gladys had been going with Elbert Goodman?' Ralph kind of dropped his head, and said 'Now, Mr. Walter——,' as if he wanted to evade the question. And Walter said 'Now, Ralph, didn't you unsolicited tell me Gladys had been going with Elbert Goodman?' He said 'Yes, Mr. Walter, I did.' I said 'Ralph, did you ever see me anywhere with Elbert Goodman?' He said 'No, Miss Gladys, I never did.' I said 'Did you ever see anything in this office or anywhere else that would cause you to make a remark like that?' He said 'No, Miss Gladys, I never did.' I said 'Why did you tell a thing like that?' He said 'I don't know.' Then Walter said 'Ralph, you told a damn lie about that, I want the truth about this: What did you do with my money you stole Friday night?' Q. What happened when Walter said that? A. Ralph run his right hand in his right pocket and come out and raised it, and lunged toward Walter. . . . A. He had an object in his hand. . . . Q. When he lunged at Walter, as you say, what happened? A. Walter fired the shot."

While appellant did not, in oral arguments or in his brief, seriously argue that the evidence was not sufficient to support the verdict, we have carefully examined it all and find it amply warranted the jury's action. It would serve no purpose to detail more of the testimony.

No complaint is made by appellant as to any of the instructions.

We come now to consider the three grouped propositions, *supra.*

(3)

The record reflects that Mr. Spencer, Deputy Prosecuting Attorney, in opening the argument for the State used this language, over the objections and exceptions of appellant: "We have two slaughter houses here where dumb animals are slaughtered and prepared for food, but we have one place of business we're not proud of, and it should be called Walter's Slaughter House, Inc. It

doesn't deal in the commodity of hogs, sheep or cattle, but in human lives. He already has two notches on his gun and a scratch besides; for God's sake don't let him put on a third one. Give this killer that's loose at Christmastime the works.''

Mr. Hale, Prosecuting Attorney, who closed the argument for the State, used the following language: ''The fact and the whole unshirted truth is this statement of his, gentlemen of the jury: 'There are two extremes; one of them is the electric chair, and one is to turn him loose.' He told you himself you would have to go to the extreme to turn this ex-convict, this two-time killer and another time shooter—that you would have to go to an extreme to turn him loose. . . .

''Mr. Sloan says that society will continue if this jury lets him loose. Society continued before when a jury popped him on the wrist and said 'We will give you two years for knifing the life out of a man at the Jonesboro Transfer Company. We will call it manslaughter. We will let you off because you come from a prominent family here in Jonesboro,' and that's the reason they get off. . . .

''Now, with reference to family. Yes; some of his people married some good people; some of his people are good people. He has a sister there that sat at that counsel table that is a good woman. No doubt about it. I think that is so. Don't you know she was ashamed, humiliated and embarrassed, not only to sit here with a killer for effect, but to know her brother, the black sheep of that family, had killed not once—not twice—not three times—three times! And who has brought about disgrace to the family——.''

At this point, the record discloses: ''Mr. Davis: I object to that, if the court please. We object to that line of argument. Mr. Hale: That is in the record, if the court please. Mr. Davis: Just a moment——. The Court: Just a minute, Mr. Hale, I don't know of any evidence saying he has taken life three times. Mr. Dudley: Counsel did not say that. The Court: So far as what he did,

he did what this court convicted him of, and nothing more. Mr. Hale (continuing): He has admitted on this witness stand that he has done plenty. This jury knows what the record is. They know that surely when you start stomping on any toes they'll find something objectionable. And you know every time you heap some hot coals under their shirt-tail they're going to jump——. Mr. Davis: That is still objected to, that character of argument, if the court please."

We are unable to say that the above language used by State's counsel was not warranted on the facts or that it was prejudicial to appellant's rights. Some of the statements were but expressions of counsel's opinion and others were supported by the facts. It is undisputed in this case that appellant had killed two men (including Ralph Donaldson) and shot a third. In fact, appellant himself so testified.

In these circumstances, we think the trial jury, possessing all the qualifications required under our statutes (§§ 8312 and 8314, Pope's Digest), that is "electors of good character, of approved integrity, sound judgment and reasonable information," could not have been misled, to the prejudice of appellant by referring to him as "ex-convict," a "two-time killer" and "another time shooter," and his place of business as "Walter's Slaughter House, Inc.," after the court's ruling, *supra*.

In *Crosby* v. *State,* 169 Ark. 1058, 277 S. W. 523, we said: "Numerous objections were made to the argument of special counsel assisting the prosecuting attorney in closing the case for the State. But we have concluded that, while the argument was perfervid, the statements in it were either in response to statements made by an attorney for the appellant, or were mere expressions of special counsel's opinion," and in *Johnson* v. *State,* 129 Ark. 313, 195 S. W. 1065, this court said: "In the final analysis, the reversal rests upon an undue advantage having been secured by argument which has worked a prejudice to the losing party not warranted by the law and facts of the case. *Kansas City Southern Ry. Co.* v. *Murphy,* 74 Ark. 256, 85 S. W. 428."

Appellant complains about other parts of Mr. Hale's closing argument, but the record reflects that no objections or exceptions were noted. Especially does he complain about the following language, to which no objection was made: "Ivie Spencer didn't make it half rough enough—he didn't make it half rough enough! In describing to you as he did this horrible killing he painted you a picture that you yourselves didn't take part in, and wouldn't have taken part in for anything under God's heaven."

Appellant insists that the trial court abused its discretion in failing on its own motion to interrupt the prosecuting attorney and instruct the jury not to consider such remarks. We cannot agree. It suffices to say that we have carefully examined the remarks complained of and hold that the action of the court in the circumstances was not reversible error.

(2)

The record discloses the following on the cross-examination of appellant: "Q. Now, you are an ex-convict, aren't you A. Yes, sir. Q. What were you convicted for? A. Manslaughter. Q. That was the time you killed a man by the name of Nash with a knife right in the same office where you killed this Negro boy?" (Objected to.) "The Court: What is the objection? Mr. Davis: The objection is this. He cannot go into the details of the killing, but then if he does, I want the privilege of summoning some witnesses to testify about it. The Court: He just asked about the killing. Mr. Davis: He says he admitted it. That is as far as he can go. . . . Mr. Davis: I object to any further questions about it. The Court: The objection is overruled. Mr. Davis: Our exception. Q. With reference to your sentence for manslaughter, you killed a man by the name of Nash with a knife in this office there, didn't you? A. It was on the street. Q. But didn't it start in the office? A. No—no. There wasn't any argument in the office. Mr. Davis: We object to all that detail, your Honor. The Court: He may ask where he killed him. Mr. Davis: He has an-

swered that. Q. I will ask you this question: Didn't you run him out of the office there and cut him down while he was on the outside? Mr. Sloan: If the court please, that goes to the question of whether he was rightfully or wrongfully convicted at that time. The Court: He may ask him about convictions. We are not going into detail. Q. You some ten or eleven years ago shot a young man by the name of Jimmie Young here on the streets of Jonesboro, didn't you? Mr. Davis: Wait a minute. I object to that, if the court please, unless he was convicted. And Mr. Hale knows it is an improper question. The Court: He may ask him whether or not he shot him. Mr. Davis: Note an exception. A. I did. Q. All right. You shot a young man over on the street who worked for the Tribune, some ten or eleven years ago, didn't you? A. Yes, sir. Mr. Davis: That is objected to, if the court please. The Court: Objection overruled. Mr. Davis: Exception. Q. While we are talking about what you have done, Walter, I will ask you if you didn't dispose of a bunch of government typewriters here a few years ago? A. No, sir. Q. The WPA typewriters? A. No, sir. Q. You didn't? A. No, sir. Mr. Davis: That is objected to, if the court please, unless he was convicted of the crime. The Court: The testimony is admissible—that sort of testimony is admissible only as going to the credibility of the witness, and the State is bound by his answer.''

This testimony, brought out on cross-examination of appellant, was proper as bearing upon his credibility, and the court properly so instructed the jury.

In *Pope* v. *State,* 172 Ark. 61, 287 S. W. 747, this court said: ''On the cross-examination of appellant he was asked if he had not cut other men, and particularly if he had not stabbed a man named Crow, and the witness answered that he had. Exceptions were saved to these questions and answers. There was no error in this ruling. Such testimony was held competent in the recent case of *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937, it being held that it is within the discretion of the trial court to permit, within reasonable limits, an inquiry, on cross-examination, into the character and antecedents of

the defendant for the purpose of testing his credibility as a witness, when the examination is limited to such antecedents as throw light on the credibility of the witness," and in the recent case of *Jutson and Winters* v. *State, ante,* p. 193, 209 S. W. 2d 681, we said (quoting from *Ware* v. *State,* 91 Ark. 555, 121 S. W. 927): "As a witness in the cause, he could have been cross-examined; and upon his cross-examination, like any other witness, he could have been asked as to specific acts for the purpose of discrediting his testimony as a witness. In *Hollingsworth* v. *State,* 53 Ark. 387, 14 S. W. 41, the court said: 'The right to impair the evidence of a witness by cross-examination must not be confounded with the right to impeach a witness by evidence introduced by the opposite party. The former may be exercised within a more extended range than the latter.' "

We think the trial court held the cross-examination within reasonable bounds.

## (1)

Finally, as to appellant's contention that error was committed in excluding evidence offered by the defense "tending to show the violent, turbulent character of the deceased, known to defendant," appellant says: "Exception was duly saved to refusal of the court to permit defendant's witness, Jimmie Jones, to testify about the details of an arrest of the deceased, Ralph Donaldson, (in 1942) in the presence of defendant when Ralph Donaldson was attempting to load a shotgun for the purpose of attacking and shooting witness, Jimmie Jones, and witness, Hoyt Cloyd. . . . Section V of the motion for new trial preserves the same exception to exclusion of the testimony of Hoyt Cloyd." Cloyd's testimony was similar, in effect, to that of Jones.

"Due exception was also taken to the exclusion of the testimony of Ike Brown, regarding an assault upon him by deceased, resulting in a plea of guilty to aggravated assault. . . . At the same time there was offered and refused record of convictions (of deceased) in the Municipal Court of the City of Jonesboro."

The offered record showed the deceased to have paid fines for gaming on July 9, 1945, July 30, 1945, June 24, 1946, for assault and battery March 5, 1944, and on July 27, 1943, paid a fine of $54.45 for resisting an officer, and also that he was indicted for assault with intent to kill a Negro, Ike Brown, and the charge reduced to aggravated assault, for which he paid a fine.

The action of the trial court in excluding this offered testimony of Jimmie Jones, Hoyt Cloyd, and Ike Brown, and the record of convictions of deceased in the Municipal Court of the City of Jonesboro was correct. Appellant insists that this evidence was proper to show the state of mind of the deceased at the time of the killing.

The rule is well settled that appellant had the right to produce testimony bearing upon the general reputation of the deceased, Donaldson, and this the court permitted him to do. However, as was said by this court in *Pope* v. *State, supra*: "It was not proper therefore to inquire into the details of the life of deceased having no relation to the encounter which caused his death, and the inquiry was therefore properly confined to the general reputation of the deceased.

"At § 222 of the chapter on 'Homicide,' in 13 R. C. L., p. 919, it is said: 'Where character evidence is offered in support of the contention that the deceased was the aggressor or to characterize and explain his acts, the defense is restricted to proof of general reputation in the community where the deceased lived, and may not show particular acts or conduct at specified times. It may not be shown that the deceased had engaged in frequent fights in which he used deadly weapons, and therewith made deadly assaults on his antagonists. But, on the issue whether or not the accused had reasonable ground to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased. But in no case may a witness state his opinion of the character of the deceased or how the latter would have acted under any particular set of circumstances.' "

Here, appellant sought to show, by other witnesses, specific criminal acts of the deceased, which, under the above rule, he could not do. Witnesses Jones, Cloyd and Brown could properly testify as to their knowledge of the reputation of the deceased as being violent and turbulent, but they could not testify as to "particular acts or conduct at specified times."

Finding no error, the judgment is affirmed.

ROBINS and McFADDIN, JJ., dissent.