SEWARD *v.* STATE.

4889                                                    310 S. W. 2d 239

Opinion delivered February 17, 1958.

[Rehearing denied March 17, 1958]

*William J. Dungan* and *John D. Thweatt,* for appellant.

*Bruce Bennett, Atty. General* and *Thorp Thomas, Asst. Atty. General,* for appellee.

Ed. F. McFaddin, Associate Justice. Charley Seward killed his brother, James (Bud) Seward; and was convicted of first degree murder (§ 41-2205 Ark. Stats.) with sentence of life imprisonment. He brings this appeal. The motion for new trial contains fourteen assignments. We have studied all of them, but discuss in detail only those most seriously urged by appellant's counsel.

I. *Sufficiency Of The Evidence.* The defendant admitted the homicide and claimed self defense. On appeal, we view the evidence in the light most favorable to the verdict, as is our rule in cases like this one. *Eddington* v. *State,* 225 Ark. 929, 286 S. W. 2d 473; *Allgood* v. *State,* 206 Ark. 699, 177 S. W. 2d 928. It appears that the defendant, Charley, entered a room in which his brother, Bud, was in bed. The brothers engaged in a conversation which started out in a friendly manner, but developed into some dispute about Bud having interfered with Charley's rent collections and other matters. The conversation became acrimonious. An eye witness said that Bud never got out of bed, and that Charley shot Bud three times. Another brother, named Mike Seward, testified that a few days before the homicide, Charlie had told him that if Bud did not stay out of the way, Charley was going to hurt Bud. In short, there was sufficient evidence to establish a willful, deliberate, malicious, and premeditated killing, and to negative the claim of self defense.

II. *Instructions.* As aforesaid, the defendant claimed self defense. He testified that Bud was in bed at the beginning of the conversation; but that Bud got out of bed and stabbed him with a knife, inflicting severe injuries; and that Charley resisted as long as he could. Here is appellant's abstract of his testimony:

". . . Then he pushed me back to the chair. When I fell in the chair he had hold of me . . . I kicked off of him with my feet, he fell on the bed. He still had the knife. When I pushed him back to the bed he started getting up with the knife when I come up with the gun. I shot him because I thought he was com-

ing back to me with the knife. I thought I was bad cut. I was afraid. I was bleeding."

Among other instructions, the defendant requested his Instruction No. 10 on self defense:

"You are instructed that one who is suddenly viciously assaulted by another is not required to retreat, but may stand his ground and repel force with force, and if necessary to protect himself, may slay his assailant, unless accused himself provoked the assault."

In refusing the instruction, the Court said that the matter was covered in other instructions. The Court's statement was true: two such instructions were defendant's Instruction No. 12 and the Court's Instruction No. S-7.

Furthermore, we also think the defendant's Instruction No. 10 was properly refused because it did not use the words "murderous intent". In *Carpenter* v. *State*, 62 Ark. 286, 36 S. W. 900, Justice Battle used this language:

"But the rule is different where a man is assaulted with a *murderous intent*. He is then under no obligation to retreat, but may stand his ground, and, if need be, kill his adversary." (Italics our own.)

It will be observed that the defendant's Instruction No. 10 was evidently framed from Justice BATTLE's language as above quoted, but failed to use the necessarily essential words, "murderous intent". The use of these words has been mentioned in some of our cases: *Larue* v. *State*, 64 Ark. 144, 41 S. W. 53; *Bishop* v. *State*, 73 Ark. 568, 84 S. W. 707; and *Garrett* v. *State*, 171 Ark. 297, 284 S. W. 734.

The Court gave, on its own motion, Instruction No. S-7, which was correct. It reads:

"You are instructed that no one in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden encounter, or in a combat on a sudden quarrel, or from anger suddenly aroused at

the time it is made, is justified in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of the killing. The danger must apparently be imminent and actual, and he must exhaust all means within his power, consistent with his safety, to protect himself, and the killing must be necessary to avoid the danger. If, however, the assault is so fierce as to make it, apparently, as dangerous for him to retreat as to stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life, or to prevent a great bodily injury, slay his assailant.''

The defendant has all the time insisted that the above instruction did not give the defendant the full benefit of his plea of self defense because it gave the positive right of self defense only in the last sentence, and then in an argumentative manner. We find no merit in defendant's contention. This Instruction No. S-7 is identical with the one approved by this Court in *Smith* v. *State*, 194 Ark. 264, 106 S. W. 2d 1019. An examination of the transcript and briefs in the cited case discloses that the same objection against the instruction — *i.e.*, that it was argumentative—was made in the *Smith* case, and the instruction was approved even in spite of such objection.

III. *Cross-Examination Of Defendant.* The defendant became a witness in his own behalf; and on cross-examination the Trial Court—over the objections of the defendant—permitted the Prosecuting Attorney to interrogate the defendant concerning (a) the death of his second wife; and (b) the homicide of Will Walker.

The defendant stated that his second wife died in 1953; that he and his wife were working in the field; that an oil can exploded; and that his wife was burned to death. The defendant's attorneys objected most strenuously to such line of questioning, saying, *inter alia:* ''Mr. Thweatt: Does he mean to make this jury

believe this man did something wrong? That is not the proper way to do that.'' The Court ruled:

"The objection is overruled at the present time . . . The Prosecuting Attorney will be permitted to ask the questions but he is informed now that he is bound by the answers of this witness because they are not matters covered on direct examination; and therefore he is bound by the answers."

In regard to the homicide of Will Walker, the defendant stated that he killed Will Walker in a knife fight in St. Francis County, Arkansas in 1936. An additional objection was that the homicide in 1936 was too remote to have any bearing on the 1956 homicide for which defendant was then on trial. The Trial Court was correct in permitting the cross-examination of the defendant on both of the matters. The defendant voluntarily took the stand and became a witness. *Willis* v. *State*, 220 Ark. 965, 251 S. W. 2d 816. The questions as to defendant's previous conduct were asked him on cross-examination. There was no effort to show by any other person the previous conduct of the defendant. See *DuVal* v. *State*, 171 Ark. 68, 283 S. W. 23. We have repeatedly held that when the defendant takes the witness stand the State may cross-examine him for the purpose of testing his credibility.

In *Hollingsworth* v. *State*, 53 Ark. 387, 14 S. W. 41, we said:

"It has always been held that, within reasonable limits, a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But, within this discretion, we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility."

In *Bevis* v. *State*, 209 Ark. 624, 192 S. W. 2d 113, Justice FRANK G. SMITH, speaking for this Court, said:

"Over appellant's objection and exception, the court permitted the prosecuting attorney to ask appellant if he had not shot his first wife. A similar question was held proper in the case of *Gaines* v. *State,* 208 Ark. 293, 186 S. W. 2d 154. The testimony could, of course, be considered for the purpose only of affecting the credibility of the witness. He answered that he had not, and that answer concluded the inquiry. Had he answered that he had, he should have been permitted to explain, without elaboration, the circumstances, as for instance that the shooting was accidental, or to explain briefly the circumstances showing lack of criminality, and as the matter was collateral, his answer could not have been shown to be false. *McAlister* v. *State,* 99 Ark. 604, 139 S. W. 684. No attempt was made to do so."

In *DuVal* v. *State,* 171 Ark. 68, 283 S. W. 23, we said the cross-examination of the defendant could relate to his conduct "regardless of time"; and in *Pope* v. *State,* 172 Ark. 61, 287 S. W. 747, the cross-examination of the defendant related—as here—to a previous stabbing incident. See also *Trotter* v. *State,* 215 Ark. 121, 219 S. W. 2d 636; and *Montague* v. *State,* 213 Ark. 575, 211 S. W. 2d 879. No error was committed by the Trial Court in allowing the cross-examination of the defendant in the case at bar.

We have examined all the other assignments in the motion for new trial and find no error.

Affirmed.