C. L. SANDERS v. STATE OF ARKANSAS

5367                                            432 S.W. 2d 467

Opinion Delivered October 14, 1968

*Donald Joe Adams* and *William S. Walker* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

CARLETON HARRIS, Chief Justice.    C. L. Sanders, appellant herein, was charged with murder in the first degree by Information filed on December 26, 1967, the

charge being that he murdered Hughlin Dean Ramey on Christmas Day of the same year. Subsequently, upon motion of the Prosecuting Attorney, the charge was reduced to second degree murder; on trial, the jury returned a verdict finding appellant guilty of the crime of voluntary manslaughter, and his punishment was fixed at a term of two years in the State Penitentiary. From the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the verdict of the jury was contrary to the evidence, and second, that the court erred in refusing to permit testimony offered by appellant concerning prior specific acts of aggression and misconduct toward others, appellant asserting that this showed that the deceased was a violent person.

The evidence reflected that Ramey, on the date of his death, was living on property owned by Sanders, such property being located across the road from a neighbor named Alan Gentry. Ramey had moved to the Sanders place about two weeks before, and in fact, had worked for Sanders on previous occasions. Late on the afternoon of Christmas Day, Sanders, accompanied by Friday Robinson and Sam Willis, drove to the home of Gentry to see about a hog. Gentry testified that he could smell alcohol on Sanders' breath while they were talking. According to this witness, as Sanders started driving back down the road, Ramey came out of his house, stopping the Sanders truck, and Gentry heard Ramey ask Sanders for a drink of whiskey. He did not hear the reply, but did hear Ramey say to Sanders, "I know you have got some whiskey." The Sanders truck was stopped right in front of the Gentry house, and was about 30 feet from a car owned by Ramey which was parked by Ramey's yard gate on his side of the road. Gentry went on into his home.

Mitchell Gentry, 15-year-old son of Alan, testified that he was looking out the window of the home, and saw the Sanders truck stop close to Ramey's car in the road between the Gentry and Ramey houses. Ramey

was talking to the men in the Sanders truck. The witness stated:

"Well, I was standing over there in the window and they come down and stopped and Hughlin was talking to them a while then he got a pump and went back over and was pumping up his tire, and pumped a while and then straightened up and then C. L. stepped around and shot him."

The pump was given to Ramey by Sanders. Young Gentry stated that the former, after obtaining the pump, put air in the tire. "After he pumped up his tire, he just raised up and there was a shot." The witness said that appellant and Ramey were about 8 or 10 steps apart, and that Ramey was standing by his car when this happened. Ramey had nothing in his hands when this occurred, and Sheriff Waggoner of Newton County testified that an examination of the premises revealed a tire pump, still hooked onto the tire, and a screw driver and hub cap on the ground. No weapons were found, nor was there any gun in the Ramey automobile. Several witnesses testified that they smelled alcohol on Sanders immediately following the shooting, but no one indicated that he was drunk.

Sanders contended that his life had been threatened by Ramey on several occasions, and Ramey stopped appellant's truck on Christmas afternoon, inquiring if he had a drink of whiskey. Appellant replied that he did not, and was called a vile name by Ramey, after which the latter borrowed a pump from Sanders for the purpose of inflating a flat tire. Sanders said that during the time Ramey was pumping, he was cursing, and saying, "I'm going to have to kill you." Appellant asserted that he knew Ramey kept a loaded shotgun on the back seat of his automobile, and he said that when the latter reached for the back door of his car, he (Sanders) shot from his hip as he got out of his truck[1]. Appel-

---

[1]Sam Willis testified that he did not see the shooting, but he said that he had observed a shotgun in the back seat of the Rame car several times prior to the day of the killing.

lant stated that he believed Ramey was endeavoring to get his gun when he fired the shot.

Steve Sanders, 17-year-old son of C. L. Sanders, testified that the children gave their father a gun rack for Christmas, and he placed the rack in the pickup truck on Christmas morning; he also put the rifle in the rack. The boy stated that he loaded the rifle, because he was going to try to shoot a hawk. The witness also said that Ramey threatened to kill his father on the Friday before Christmas.

There was certainly substantial evidence to support the verdict. The uncontradicted proof is that the deceased had no weapon in either his hand or his car. In order to obtain his rifle, Sanders reached behind him to a rack in the back of his truck, took a 30-30 rifle from the rack, stepped from the truck, and fired the shot. During the time that it took appellant to obtain the rife and fire the shot, Ramey was still standing on the ground— still without a weapon. The jury could easily have found that Sanders was in no danger of receiving bodily harm, and that he was the agressor and opened fire without any legal justification whatsoever. As stated in *Brown* v. *State,* 231 Ark. 363, 329 S.W. 2d 521:

> "The proof was adequate to justify a conviction of manslaughter, and in fact, might well have justified a conviction for a higher degree of homicide."

As to the second contention, the law is clearly established that a violent disposition toward others on the part of a victim of homicide cannot be shown by specific acts of aggression and misconduct. *Taylor* v. *State,* 222 Ark. 491, 261 S.W. 2d 401; *Bogue* v. *State,* 152 Ark. 378, 238 S.W. 64. Such violent nature is properly shown by proof of the general reputation of the deceased, and, in fact, five witnesses were offered by appellant who testified that Ramey had the reputation of being a violent

and dangerous person. Several witnesses also stated that Sanders had the general reputation of being a law-abiding citizen.

The court did permit Sanders to testify about specific threats made to him by the victim,[2] and appellant testified that he had been threatened on the day before the shooting; also, that on the Wednesday before the shooting (which occurred on a Monday) Ramey had been by his house, and told appellant that he was going to kill him "on account of my Dad." He likewise testified about another occasion when Ramey had purportedly cursed and said, "I am going to kill you all * * * and if I can't get you with this hammer, I'll use my shotgun."

Actually, though the court held that appellant could not introduce any testimony relative to threats or acts of violence against third persons (and we have already said that this holding was correct), quite a bit of this evidence was heard by the jury. For instance, Sanders testified that Ramey had told him that he was going to kill Troy Magnus; that three years prior to the shooting of Ramey, Sanders' father had to stop Ramey from killing his (Ramey's) wife; further, that Ramey "told him that he was burning some man out and laying out there waiting for him to kill him * * * he set Yandell's barn afire and thought he would come out and he was going to shoot him."

Finding no reversible error, the judgment is affirmed.

---

[2]Also, where a defendant relies upon self-defense, uncommunicated threats toward the defendant are admissible where there is doubt as to who was the aggressor; this evidence is admissible solely for the purpose of shedding light on this question. **Decker** v. **State,** 234 Ark. 518, 353 S.W. 2d 168.