JAMES FANT v. STATE OF ARKANSAS

CR 73-69 498 S.W. 2d 332

Opinion delivered September 4, 1973

R. Gary Nutter and Smith, Stroud, McClerkin, Conway & Dunn, for appellant.

Jim Guy Tucker, Atty. Gen., by: Charles A. Banks, Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. On February 3, 1972, James Fant, appellant herein, entered a plea of guilty to the charge of grand larceny and was given a ten year sentence by the Miller County Circuit Court. The court suspended the sentence conditioned upon good behavior and "leaving alcohol alone", making the following pertinent remarks at the time.

"Your problem apparently is drinking, and then you don't leave other people's stuff alone. *** A man with a wife and six children, and a woman—the mother of those children, who has had cancer, and then, times

as hard as they are around your house—it has to be. \*\*\* And you don't have any money in that dollar at all to buy any kind of hooch. When you take one drop of anything, you are taking a piece of bread out [of] one of those kid's mouth, and they are going to have to live on wind pudding. If they do, you are not going to be here to see it. \*\*\* Let me tell you one other thing. I am going against the recommendation of the law enforcement officials by giving you a suspended sentence. I may make a mistake in your case one time. I don't plan on making it twice."

The matter of Fant's refraining from the use of alcohol was mentioned forcefully several times and appellant apparently fully understood, stating, "I can leave alcohol alone. I guarantee that I can." Subsequently, on July 26, appellant was arrested in Texas by Officer Dale Hampton of the Texas Highway Patrol and charged with driving while intoxicated, following an automobile accident. On August 31, a hearing was conducted by the Miller County Circuit Court as a matter of determining whether the suspended sentence given Fant should be revoked. Officer Hampton testified that following the accident, he administered a breathalizer test, and after stating his qualifications for giving the test, stated that Fant checked 0.18 which, under Texas law, established that he was under the influence of alcohol.[1]

The officer also said:

"He was definitely intoxicated. He acted intoxicated; he was unsteady on his feet; and in my opinion, he was in an intoxicated condition.

BY THE COURT: Did you smell any intoxicants on him?

---

[1]In *Jarvis* v. *Alcoholic Beverage Control Board*, 253 Ark. 724, 488 S.W. 2d 709, Officer Jim McClure testified relative to intoximeter tests given to persons arrested for drunkenness. From the opinion:

"McClure explained the procedure in giving the tests and said that the final reading on Arlis Lee was .18%. The witness explained that .10% supports a charge of driving while intoxicated and a .15% or over is public drunkenness."

THE WITNESS: Yes, sir, I could smell intoxicants on his breath."

On cross-examination, Hampton testified that Fant told him that he had had "one beer and one drink of whiskey." Appellant testified that a friend gave him a drink of whiskey, stating to him that "just one drink won't hurt you" and that he had also had "two beers"; that he had "chunked the beer out—the last can out" about five minutes before the accident occurred. At the conclusion of the hearing, the court revoked the suspended sentence, stating:

> "This is the third occasion that you have been brought back in here for a revocation, and because of your children and your wife, I have given you two additional chances. You have been in trouble before, and I told you after you had advised me that your troubles always came after you drank; that for you not to take one drop of alcohol, didn't I? *** And after the last petition, and there was evidence that you had been drinking, I told you I would give you one other chance, didn't I?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: And then you go out and get liquor and beer when you know what it does to your system. Alcohol to your system is just exactly like strychnine is to other people.
>
> Therefore, you are hereby sentenced to the Arkansas Department of Corrections for ten years, and the clerk will put on his commitment that there were three petitions for revocation; that you were given two additional chances, but the third chance after a suspension, it was revoked, ***."

On this appeal from the revocation, two points are relied upon, viz., that the revocation was an abuse of discretion by the trial judge, and second, that the appellant was unlawfully returned from the State of Texas to this state for the revocation hearing, contrary to his rights under the United States Constitution.

Appellant concedes that the action of the court in revoking the suspended sentence will not be reversed on appeal unless there has been a gross abuse of the trial court's discretion. *Calloway* v. *State,* 201 Ark. 542, 145 S.W. 2d 353. It is then asserted that the revocation occurred "because of the fact that the appellant consumed one drink of whiskey and two cans of beer." We cannot agree with this assertion; rather, it appears that the suspension was revoked because of evidence that Fant was intoxicated, such evidence being presented in court at a hearing, and appellant being represented by counsel. In *Spears* v. *State,* 194 Ark. 836, 109 S.W. 2d 926, Spears had pleaded guilty to grand larceny, the court, however, suspending sentence "during good behavior." Subsequent thereto, the suspension was revoked and *inter alia,* Spears asserted that the evidence was insufficient to justify the revocation. We disagreed, stating:

> "Here, the evidence was sufficient to justify the court in exercising the discretion it did as the evidence on the part of the state was to the effect that appellant was drunk, was cursing in a public place, and had a fight with one Jack Fulmer."

In addition, it will be noted that the court mentioned that this was the third occasion that a revocation had been sought by the State, and that the court had refused to earlier revoke the suspension, giving appellant additional opportunities to properly conduct himself.[2]

It is apparent that the trial court had, contrary to appellant's allegations, been rather lenient with Fant, and we certainly find no abuse of discretion in revoking the suspended sentence.

Nor do we find any merit in appellant's second contention. It is asserted that there is no evidence in the record that Fant consented to being removed from the State of

---

[2]On June 14, the prosecuting attorney's office had filed a petition asking for revocation of the suspension on the basis of the fact that Fant had been involved in a fight and jailed for aggravated assault in Texarkana, Texas. The field report of the probation officer reflected that the complaint had been filed by Fant's wife, Fant and her brother having engaged in a fight, and Mrs. Fant being cut and stabbed on the arm and in the side by appellant when she tried to break up the fight. The recommendation was that probation be revoked but the court, as stated, did not enter such an order at that time.

Texas to the State of Arkansas, and that there was no extradition proceeding initiated and followed by this state. Of course, on the other hand, though appellant testified, there is no evidence that he was returned to this state against his will, nor was any such contention advanced at the hearing. The subject does not appear in any manner in the trial court. No authority is cited in appellant's brief, and only three paragraphs are devoted to this point. Even if there were evidence that Fant's return to this state was involuntary or accomplished by force, it would not appear there is merit in the contention. As early as 1885, this court held contrary to appellant's contention. See *Elmore* v. *State,* 45 Ark. 243. In *United States* v. *Vicars,* 467 F. 2d 452 (1972), Cert. denied March 5, 1973, the United States Court of Appeals for the Fifth Circuit, in denying a similar contention, stated:

"Even if, as Gonzales claims, he was illegally arrested in the Panama Canal Zone and brought to the United States, this is not grounds for requiring that the trial court release and discharge him without trial. E. g., *Frisbie* v. *Collins,* 342 U.S. 519, 522, 72 S. Ct. 509, 511, 96 L. Ed. 541, 545 (1952) ('This Court has never departed from the rule . . . that the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a "forcible abduction." '); *Stamphill* v. *Johnston,* 136 F. 2d 291, 292 (9th Cir.) cert. denied, 320 U.S. 766, 64 S. Ct. 70, 88 L. Ed. 457 (1943) ('The personal presence of a defendant before a District Court gives that court complete jurisdiction over him, regardless of how his presence was secured, whether by premature arrest . . . wrongful seizure beyond the territorial jurisdiction of the court . . . false arrest . . . or extradition arising out of an offense other than the one for which he is being tried.'); United States ex rel. *Voigt* v. *Toombs,* 67 F. 2d 744 (5th Cir. 1933), petition for cert. dismissed, 291 U.S. 686, 54 S. Ct. 442, 78 L. Ed. 1072 (1934) ('It is well settled in the courts of the United States that jurisdiction once acquired in a criminal case is not impaired by the manner in which the accused is brought before the court.')."

Affirmed.