Jeffery (Buddy) POPE *v.* STATE of Arkansas

CR 77-122                                   557 S.W. 2d 887

Opinion delivered November 28, 1977
(In Banc)

*John R. Henry,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. Appellant Jeffery (Buddy) Pope was charged with first degree murder. The charge arose from the fatal shooting of Shorty Luster. Appellant admitted shooting the deceased but alleged self-defense. A jury trial resulted in appellant's conviction of second degree murder and a twenty-year sentence was imposed. The State's petition to revoke suspended sentence was also granted by the court, and a five-year sentence was imposed to run concurrently with the sentence of second degree murder.

For reversal appellant first contends that the verdict was contrary to the law and the evidence.

Luster was the proprietor of the Silver Slipper Cafe which was frequented by appellant. On the afternoon of Sunday, Febraury 22, 1976, appellant and J. W. Townsend were in the back of the tavern engaged in a dice game. Townsend refused to call appellant's money, heated words were exchanged by the two men and Townsend walked to the front of the tavern. Shortly thereafter appellant left the tavern and testified he went next door to borrow some money. When appellant returned to the cafe he was carrying his .22 caliber pistol at his side. He approached Townsend, and their argument was resumed. There was testimony to the effect that appellant ordered Townsend to give him the gun he was carrying. Townsend testified that he had a pistol in his front

pocket but that he never drew it.

Luster walked over to the two and attempted to stop the altercation. Words were exchanged by Luster and appellant. Appellant's own testimony reflects Luster told him that if he were going to start something to leave the tavern. Appellant refused to do so. Luster then walked to the back of the counter and got his pistol, a .38/.40 caliber handgun. Different accounts were given as to what happened next, but in the ensuing gunfire Luster was killed. The surgeon who examined his body testified that Luster had been shot five times.

Appellant denied he shot his gun five times and further stated he was not trying to shoot anyone. Only appellant and one defense witness testified that Luster fired his pistol.

Neal Johnson, the investigating police officer, arrived at the scene shortly after the shooting and received possession of Luster's gun from the bartender. Upon inspection of it Johnson found that the cylinder contained three live rounds and three empty holes but no empty cartridges were removed from it. Townsend and two other witnesses testified that they did not see Luster fire his gun.

In determining the sufficiency of the evidence on appeal we view that evidence which is most favorable to the appellee, and if any substantial evidence exists then we affirm. *Williams v. State,* 257 Ark. 8, 513 S.W. 2d 793 (1974). Jury findings are not disturbed unless there is no substantial evidence to support the verdict. *Inklebarger v. State,* 252 Ark. 953, 481 S.W. 2d 750 (1972). We do not attempt to weigh the evidence or pass on the credibility of the witnesses where the testimony is in conflict. See *Barnes v. State,* 258 Ark. 565, 528 S.W. 2d 370 (1975).

In *Erby v. State,* 253 Ark. 601, 487 S.W. 2d 266 (1972), this Court affirmed appellant's conviction of second degree murder and stated: "When the jury disbelieved the defendant's plea of self-defense, as it had a right to do, the killing was without justification, and malice might well be implied."

Here there is ample testimony in the record to show that appellant had a disagreement with one of the patrons of the Silver Slipper Cafe; that he left the establishment and returned with a gun; that he was asked by the owner of the tavern to leave, but refused; that he was the aggressor; and that he killed Luster, who was trying to restore order to his place of business.

The jury resolved any conflict in the testimony, and there was substantial evidence to support the jury's verdict of guilty of second degree murder in this case.

Appellant next alleges that the trial court erred in excluding his testimony regarding his knowledge of "prior vicious acts" committed by the decedent. During the direct examination of appellant the record reflects:

Q. Buddy, has anybody ever told you that Mr. Shorty has ever killed anybody?

A. Yeah.

MR. BURNETT: Objection, Your Honor.

The objection was sustained, and the trial court excluded this testimony on the basis that it was self-serving. Appellant's attorney made the following proffer:

MR. HENRY: The defendant at this time, or the attorney for the defendant asked the witness, Buddy Pope, a question, "has it been related to you that Shorty Luster had previously killed anyone?" And, of course, an objection was interposed at this time and was sustained by the Court. If allowed to testify, the defendant, Buddy Pope, would state that it was his knowledge or it had been told to him that Shorty Luster had killed three people while living in the State of Mississippi and that he had whipped several other people while operating a tavern there in Marked Tree. The statement is hearsay or it is not hearsay and it is not offered for the truth of the matter but is offered to show the state of mind of this defendant at the time that the

shooting occurred.

The proffer was refused and the testimony excluded.

The evidence as to whether the deceased was the aggressor was conflicting and so it was important to know appellant's state of mind at the time of the offense or "What did appellant reasonably believe?" Ark. Crim. Code §§ 41-506 and 41-507 (1976) and Commentary. It was relevant for appellant himself to testify as to his apprehension of imminent danger and his reasons therefor. 1 Wharton's Criminal Evidence § 225, p. 481 (13th Ed. 1972).

Wigmore on Evidence (3rd Ed. 1940) states the following pertinent rules:

§ 198. Character of Deceased, in Homicide, from Particular Acts of Violence. When the turbulent character of the deceased, in a prosecution for homicide, is relevant (*ante,* § 63), there is no substantial reason against evidencing the character *by particular instances of* violent or quarrelsome *conduct.* * * * (1 Wigmore on Evidence § 198 [3d Ed. 1940].)

§ 248. Defendant in Homicide: (c) Violent Acts of the Deceased. * * * The fact that the circumstance creating apprehension is a single act or series of acts, instead of a general character, does not necessarily destroy its capacity to create apprehension. Nor does its distance in time from the moment of the affray necessarily have that effect. Such particular acts may or may not in a given case be calculated to create apprehension; but there is no reason for a fixed rule of exclusion, invariably forbidding their consideration: (Omitting cases.) The state of the law has come on the whole to favor the admissibility of such facts. (Omitting cases.) (2 Wigmore on Evidence § 248, p. 61 [3d Ed. 1940].)

The admissibility of evidence pertaining to appellant's knowledge of specific instances of violence by the deceased is discussed in *Montague v. State,* 213 Ark. 575, 211 S.W. 2d 879 (1948), quoting from *Pope v. State,* 172 Ark. 61, 287 S.W. 747

(1926):

> "At § 222 of the chapter on 'Homicide,' in 13 R.C.L., p. 919, it is said: 'Whére character evidence is offered in support of the contention that the deceased was the aggressor or to characterize and explain his acts, the defense is restricted to proof of general reputation in the community where the deceased lived, and may not show particular acts or conduct at specified times. It may not be shown that the deceased had engaged in frequent fights in which he used deadly weapons, and therewith made deadly assaults on his antagonists. *But, on the issue whether or not the accused had reasonable ground to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased.* But in no case may a witness state his opinion of the character of the deceased or how the latter would have acted under any particular set of circumstances' " (Italics supplied.)

In the replacement for Ruling Case Law, we find this passage on the subject at 40 Am. Jur. 2d Homicide, § 306, p. 574 (1968):

> * * * Clearly, evidence of specific acts of violence by the deceased is inadmissible where the defendant had no knowledge or had not been informed of such acts prior to the homicide, since, naturally, his mind could not have been materially affected in the absence of such knowledge. Some courts have expressed the view that the fact that the defendant obtained knowledge, prior to the homicide, of the violent acts of the deceased, either through his own personal observation or through information transmitted to him directly by the deceased or third person, does not render evidence of other specific acts admissible. However, according to most courts, and the trend of modern authority, if, prior to the homicide, the defendant, either through his own observation or through information communicated to him by others, including the deceased himself, knew of other acts of violence of the deceased, *he may, in support of his contention that he had*

*reasonable grounds to believe himself in imminent danger from an assault by the deceased, introduce evidence of such prior unlawful acts of violence by the deceased.*[1] Such evidence bears on the question whether the defendant reasonably apprehended danger to his life or of great bodily injury. * * * (Italics supplied.)

This does not mean that whether the specific acts actually took place in Mississippi becomes an issue in the case on which evidence might be introduced. The proffer was made to show what appellant had heard.

We also note this testimony was not offered as bearing on the question as to who was the probable aggressor, nor was testimony of witnesses other than the defendant offered to show previous violent acts by the deceased. Such evidence may not have been admissible. But appellant was entitled to have the jury know his state of mind in determining his guilt or innocence.

Appellant's final contention is that the trial court erred in granting the State's petition to revoke appellant's suspended sentence.

This is a matter within the sound discretion of the trial court, and this Court will not overturn the granting of such petition absent a showing of gross abuse of that discretion. *Fant v. State*, 255 Ark. 1, 498 S.W. 2d 332 (1973).

No argument in support of appellant's contention was made other than a conclusory allegation that the trial court abused its discretion. Since appellant frequently carried a pistol, participated in illegal gambling games and was convicted of second degree murder, we cannot say the trial court's action was an abuse of discretion.

Reversed for excluding proffered testimony on specific acts of violence for purposes indicated.

Reversed and remanded.

---

[1] Citing *Pope v. State, supra,* among others.

HARRIS, C.J., dissents.

BYRD, J., not participating.

CARLETON HARRIS, Chief Justice, dissenting. I disagree with the finding of the majority that this case should be reversed because of the failure to permit appellant to answer the question "Has it been related to you that Shorty Luster had previously killed anyone?" and I have more than one reason for feeling this way.

In the first place, we have said many times that a violent disposition toward others on the part of the victim of a homicide cannot be shown by specific acts of aggression and misconduct. *Sanders v. State*, 245 Ark. 321, 432 S.W. 2d 647. In that case, citing several prior cases, we stated that the law is clearly established that a violent disposition toward others on the part of a victim of homicide cannot be shown by specific acts of aggression and misconduct, and that such evidence is properly shown by proof of the general reputation of the deceased. I do not see the pertinence of Ark. Crim. Code §§ 41-506 and 41-507 (1976). The former section provides that one is not justified in using physical force upon another if "he provokes the use of unlawful physical force by the other person; or he is the initial aggressor; ***." The latter section provides that:

> "A person may not use deadly physical force in self defense if he knows that he can avoid the necessity of using that force with complete safety:
> (a) by retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor, or if he is a law enforcement officer or a person assisting at the direction of a law enforcement officer; ***."

The evidence clearly reflects that appellant had an argument with Townsend, one of the patrons of the cafe, then left the cafe and returned with a gun. Five witnesses testified that Luster, the proprietor, apparently as a matter of preserving the peace, asked Pope, when he was having the altercation with Townsend, to leave the cafe; for that matter, appellant

himself admitted that Luster had asked him to leave Townsend alone. Now, all appellant had to do was stay away from the establishment; instead, he returned ready for combat. In my view (and apparently that of the jury), Pope was undoubtedly the aggressor.

Pope was the only witness who testified that he had been told that Luster had killed somebody. This brings me to my second reason for considering the testimony inadmissible.[1]

The alleged person, or persons, who purportedly told Pope that Luster "had killed three people while living in the State of Mississippi and that he had whipped several other people while operating a tavern there in Marked Tree," were never identified, and I contend that one raising such a defense, should be required to do more than make a general hearsay statement without being specific as to the source of his information, without being specific as to the identity of the three persons who were killed in Mississippi, and without being specific as to the "several" people who had been "whipped" in Marked Tree. I daresay that hereafter there will be many defendants charged with murder who, on trial, will testify that they heard the deceased was violent!

However, if my reasoning is faulty in all that has been said, there is still a potent reason why this case should not be reversed, for the proffer of evidence was, in my opinion, totally defective. I refer to the fact that the proffer does not include *when* Pope received his information, *i.e.,* before or after the killing. The question was simply, "Has it been related to you that Shorty Luster had previously killed anyone?" Of course, this purported information could have been related to appellant after the killing but before the trial, and certainly under no circumstances would the evidence have been admissible if such knowledge was acquired after the shooting.

I would affirm the judgment of the Poinsett Circuit Court.

---

[1]Let it be remembered that the proffered testimony did not consist of threats purportedly made in the past toward appellant; actually, Pope stated that he and Luster had always been good friends.