## Eugene JARVIS & Noble JARVIS d/b/a JARVIS' LIQUOR STORE v. ALCOHOLIC BEVERAGE CONTROL BOARD

5-6100                                          488 S.W. 2d 709

Opinion delivered January 8, 1973

*Perkins, Boyce & McLarty*, by: *Tim F. Watson*, for appellants.

*Ray Thornton*, Atty. Gen., by: *Milton Luekin*, Asst. Atty. Gen., for appellees.

CARLETON HARRIS, Chief Justice. Appellants, Eugene Jarvis and Noble Jarvis, are bothers who own and operate a club in Newport where beer is sold. In November, 1969, they were notified that a hearing would be held before the Director of the Department of Alcoholic Beverage Control for the purpose of determining whether their permit should be suspended, cancelled, or revoked for allegedly allowing beer to be sold to certain persons while these persons were in an allegedly intoxicated condition on or about August 2, 1969. On hearing, the Director found that appellants were guilty of violating the regulations of the Department and the beer permit held by the Jarvis brothers was suspended for a period of four weeks, two weeks of the suspension to be held in abeyance during a six month probation period, and they were prohibited from selling, dispensing, or allowing the consumption of alcobolic beverages on the premises. This decision was appealed to the Alcoholic Control Board which affirmed

the Director's decision, after which a petition for review of the Board's decision was filed in the Jackson County Circuit Court under the authority of the Arkansas Administrative Procedure Act. On January 3, 1972, the court affirmed the opinion and ruling of the Board and from such judgment, appellants bring this appeal. For reversal, it is simply asserted that the circuit court erred in not reversing the decision of the Board for the reason that the findings of the Board are not supported by substantial evidence.

Jack Henson, employed by the Criminal Investigation Division of the Arkansas State Police, together with another investigator went to Newport to investigate whether intoxicants were being illegally sold at Jarvis' Bamboo Club, arriving there about 10:00 p.m. and staying until a little past midnight. The investigators purchased three beers. Mr. Henson testified that they were sitting in a location where they could view the entire club and that they did not tell anyone that they were with the Arkansas State Police. The witness said that during the period of time mentioned above they observed eight persons being sold beer who, in his opinion, were intoxicated. He characterized three, *viz*, Bill W. Scroggins, Arlis R. Lee, and William David West as excessively drunk. Henson stated that these three men were served beer approximately every twenty to twenty-five minutes; that they were using unusually loud language; that when they went to the restroom they were "walking drunk". He identified Mrs. Leona Hargrove, a waitress, as the person who served them. Other officers came to the place a little after midnight and the eight persons mentioned were arrested. Henson did not know the people before they were arrested and he stated that he did not see either Noble Jarvis or Eugene Jarvis, owners, prior to the arrest.

Jim McClure, a Sergeant with the Newport City Police Department, testified that he administered intoximeter tests to the people that were arrested at Jarvis' Tavern and taken to the police station. McClure stated that he used the type of test that the department had been using for two years and that he attended the training session that was conducted in St. Louis by the manufacturer of this product. McClure explained the procedure in giving the test and said that the final reading on Arlis

Lee was .18%. The witness explained that .10% supports a charge of driving while intoxicated and a .15% or over is public drunkenness. Lee was charged with public drunkenness and the record reflected "Bond forfeiture on the Eighth of August, 1969, Thirty Dollars for public drunkenness". The reading on West was .21% and he too was charged with public drunkenness, and subsequently entered a plea of guilty and was fined $20.00. McClure likewise administered an intoximeter test to Scroggins, the result showing a .20%. Scroggins too was charged with public drunkenness and subsequently forfeited bond to the city court.[1]

Freddie Clark, also with the Arkansas State Police, testified that he was present and observed Lee, West, Scroggins, and Maloff; that they were obviously in a drunken condition, speech impaired, staggering, and in a "happy mood, laughing—nothing seemed to matter to them". He considered their degree of drunkenness "excessive". Billy Bob Davis, a Lieutenant with the Arkansas State Police, likewise testified that West, Lee, Scroggins and Maloff were excessively drunk.

Noble Jarvis testified that he had instructed his waitresses that they were definitely not to serve any persons who were intoxicated; that he did not know of the sales here at issue and would have stopped such sales had he known it. He also stated that if a waitress had continued to serve them "they would not be in our employ any more". On cross-examination however, he admitted that he had not fired anyone, though he had been charged several times and appeared before the director. He also admitted that he had been convicted of perjury and "selling to a minor".

Leona Hargrove testified that the Jarvis brothers had given her instructions,. "If I thought a person had enough—to not serve them anymore, cut them off; and that is what I did". She said that she had tried to follow the instructions and on the night in question had "cut off" people who had had, in her opinion, too much to

---

[1] Of the five remaining, the intoximeter test of Joe P. Gould reflected .16%, Gould forfeiting a bond for public drunkenness; John Maloff refused to take the test but subsequently forfeited a $30.00 bond in city court; the other three did not register high enough to be charged with public drunkenness, the officer testifying that the percentage was .11% or .12%.

drink. The witness stated that she did not know the names of these persons. Susie Teague, another waitress, testified to receiving the same instructions and she said she also "cut off" some persons on the night in question but she could not identify them other than Joe Gould. She stated she felt that Gould was drunk; that he had been there all night and had been drinking beer sold to him on the premises. That concluded the testimony.

The charges which were presented to the director were brought under the provisions of section 35 of the "Revised State Beer, Wine, and Liquor Regulations", which are the same as Ark. Stat. Ann. § 48-529 (Repl. 1964), reading as follows:

> "No holder of a license authorizing the sale of beer for consumption on the premises where sold, or any servant, agent, or employee of the licensee shall do any of the following upon the licensed premises:
>
> (A) . . . . .
>
> (B) knowingly sell beer or wine to any person which such person is in an intoxicated condition."

Appellants argue that there is no substantial evidence to support the finding of the board that the appellants violated this regulation. From the brief:

> " 'Substantial evidence' is a much-used phrase in American jurisprudence. *Words and Phrases* defines substantial evidence variously as 'more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and 'the question of what constitutes 'substantial evidence' is whether men of ordinary reason and fairness could find that most favorable evidence sustains the truth of the fact to which proof is directed'. In Arkansas, substantial evidence has also been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' *** The issue to be decided by the Court may thus be stated as follows: Does the record contain evidence, as distinguished from conjecture or speculation, upon which reasonable men could

conclude that the Appellants violated the Alcoholic Beverage Control regulation in question on August 1, 1969?"

To this last question contained in appellants' brief, we answer "yes". Henson testified that three of the persons purchasing beer were excessively drunk. The evidence of drunkenness was substantiated by the intoximeter tests. In fact, two others, Gould and Maloff, forfeited bond at city court, the intoximeter test for Gould reflecting .16%. Appellants appear to be under the impression that disciplinary measure can only be taken against the Jarvis brothers if the particular sales were made with their specific consent or knowledge. We do not agree. The statute declares a violation if such sales are made by any employee of the licensee. Of course, were it otherwise, such a statute would indeed be difficult to enforce for it would require the personal approval of a licensee for each particular sale in order to enforce the provisions of the act; this would, of course, be practically impossible. Not only that, but under appellants' theory, it would only be necessary for the holder of a license to present proof that he was not present when the sales were made, and that he had told his employees not to sell to an intoxicated person—the law would then be meaningless. The two waitresses testified that they did "cut off" sales to some of the customers on the occasion in question but they were unable to name any individual other than Joe Gould, and for that matter, under the proof, it would appear that Joe Gould should have been "cut off" earlier.

Affirmed.